Hillsborough, }
April 7, 1908. }

CARTER, *State Treas.,*  *v.*  WHITCOMB *& a., Ex'rs.*

Section 1, chapter 68, Laws 1907, is amendatory, and not merely declaratory, of the original inheritance-tax statute.

The question whether collateral legacies are taxable is to be determined in accordance with the statute in force at the date of the testator's decease.

A legacy to a charitable, educational, or religious society or institution in this state, whose property, when used exclusively in carrying out the purposes of the association, is exempt from taxation, is not subject to the tax imposed by chapter 40, Laws 1905, although the legatee owns taxable estate and intends to invest the proceeds of the legacy in such property.

A legacy to a society organized for religious, educational, or philanthropic purposes, whose charity is administered for the benefit of the public within this state, is not subject to taxation under chapter 40, Laws 1905, notwithstanding such association confers particular benefits upon its own membership or a favored class, requires its beneficiaries to pay an established fee, and acknowledges formal allegiance to a national body incorporated in another jurisdiction.

A legacy to a missionary society existing in this jurisdiction, whose charity is of such a character and so administered as not to be of substantial benefit or advantage to the people of this state, is subject to the tax imposed by chapter 40, Laws 1905.

PROBATE APPEAL. Facts found by the court. Transferred without a ruling from the September term, 1907, of the superior court by *Peaslee,* J.

Susan E. Reed, a resident of Nashua, died September 21, 1905, and the defendants were appointed executors of her will. Among the legatees named are the Main-street Methodist Episcopal Church of Nashua, the Ladies' Social Circle, the Senior Sunday School, the Junior Sunday School, the Auxiliary of the Woman's Foreign Missionary Society, the Home Missionary Society, the Choir, the Epworth League, and the Junior League, all said societies being

connected with the Main-street Church; also, the Young Women's Christian Association of Nashua, the Auxiliary of the Young Men's Christian Association of Nashua, the Protestant Home for Aged Women in Nashua, the Day Nursery in Nashua, and the Women's Relief Corps of Nashua. April 20, 1907, the probate court decreed that these legacies were not subject to the inheritance tax provided in chapter 40, Laws 1905, and the plaintiff appealed.

*Edwin G. Eastman,* attorney-general, and *Joseph S. Matthews,* for the plaintiff.

*George B. French,* for the defendants.

WALKER, J.   By the statute in force on the date of the death of the testatrix, " all property within the jurisdiction of the state, . . . which shall pass by will, or by the laws regulating intestate succession, . . . except . . . to or for the use of charitable, educational, or religious societies or institutions in this state the property of which is by law exempt from taxation, . . . shall be subject to a tax of five per cent of its value, for the use of the state." Laws 1905, c. 40, s. 1.   Before the decree of the probate court in this proceeding, this statute had been amended by the legislature of 1907, by apparently making the exemption of legacies to such institutions from the tax or impost to apply only " when such society or institution is bound by the terms of the will, . . . or by the limitation of its powers, to devote such property solely to such uses and purposes that the property in its hands will be by law exempt from taxation." Laws 1907, c. 68, s. 1.   Under the former law, no inheritance tax was chargeable upon a legacy to a charitable, educational, or religious society which enjoyed, under the law, immunity from taxation upon its property.   The use to be made of the fund bequeathed to such a society was not deemed to be important; at least, it was not regarded by the legislature as so essential as to be declared to be the test of the exemption. Under the latter statute, it would seem the exemption attaches in such a case only when it appears that the money or property donated must be devoted to such uses by the society that it will be exempt from the general, yearly tax burden.   That the legislature intended by this amendment to introduce into the law a material change is too plain for argument. Its purpose was to restrict the exemption within narrower bounds than those set by the former statute.   The claim made by the plaintiff, that the amendment is merely declaratory of the meaning of the original statute, cannot be sustained upon any reasonable construc-

tion of legislative action; and if sustained, it might not be of controlling importance in a judicial finding of the legislative intention evidenced by the act of 1905. It is plain that the two acts are not identical in meaning.

Nor was it the intention of the legislature of 1907 to repeal the statute of 1905. While it reënacted the latter statute, with the material change above suggested, it did not in terms attempt to repeal it; and no reason is apparent why it should. It was seeking to perfect legislation upon a comparatively new subject; and it accomplished its purpose by enacting an amendment to the old statute in a single particular, " so that said section shall read as follows." To hold that this amounted to a repeal of the former statute would be to give no force to the evident intention of the legislature. *Matter of Estate of Prime,* 136 N. Y. 347.

Equally untenable is it to urge that the amendment of 1907 was intended to have a retroactive effect and to apply to estates then in course of settlement. The language used is prospective. It relates to property " which shall pass by will." The testatrix's will became effective to pass property upon her death. The necessary delays incident to the settlement of the estate and final decree of distribution did not postpone the passing of the estate within the meaning of the statute. The legatees derive their title from the testatrix. Their rights became fixed at her death. They then became the owners of the property bequeathed to them, though the possession and actual enjoyment thereof were delayed by operation of law; and at the same time the right of the public to the tax accrued. As the legatees' interests vested at the death of the testatrix or upon the probate of the will (*Brown* v. *Brown,* 44 N. H. 281; *Ordway* v. *Dow,* 55 N. H. 11; *Sanborn* v. *Clough,* 64 N. H. 315), there is little ground for holding, in the absence of express language to that effect, that the legislature intended the amendment of 1907 to have a retroactive effect and to defeat or limit rights so vested under testamentary provisions. The construction and effect of a will are ordinarily governed and determined by the law in force when it became effective. *Loveren* v. *Lamprey,* 22 N. H. 434; *Wakefield* v. *Phelps,* 37 N. H. 295, 306; *Perkins* v. *George,* 45 N. H. 453, 455; *Morgan* v. *Perry,* 51 N. H. 559, 567. The rights, therefore, of the parties to the suit under the will in question must be determined in accordance with the statute of 1905, which was in force when the testatrix died and when the interests of the parties under her will vested.

In this view of the case, the question arises whether the bequests to the defendant associations and societies are exempt from the tax imposed by the statute of 1905. In the language of the statute, if they are " charitable, educational, or religious societies

or institutions in this state," and if their property " is by law exempt from taxation," the bequests to them are not subject to the tax; otherwise they are. If the meaning of the statute is that the exemption only applies when the association, falling within the terms of the statute in other respects, holds all its property free from yearly taxation, practically the exemption, which was intended to foster and encourage such institutions, would be found to apply to a rather peculiar and limited class. *Matter of Will of Vassar*, 127 N. Y. 1, 10. Most charitable institutions whose property " is devoted exclusively to the uses and purposes of public charity," and which is " exempted from taxation " (Laws 1895, c. 66), may own property, not exclusively devoted to charity, which is subject to the general tax burden. The use that is made of the property determines the question of its taxability under the statute quoted. Some of it may be exempt from taxation while the rest of it is not. Such a society may own real estate which is not directly used in carrying on its charitable work,—as, for instance, it may rent real estate for business purposes (*Phillips Academy* v. *Exeter*, 58 N. H. 306; *New London* v. *Academy*, 69 N. H. 443, 446; *Young Men's Christian Ass'n* v. *Keene*, 70 N. H. 223) and be subject to taxation therefor. It may invest money in savings banks, which thereupon becomes taxable. But the fact that it may own taxable property, or that it in fact does own such property, does not prove that the legislature did not intend to include such an institution of a charitable character within the favored class. In consideration of public benefits conferred by such establishments, and in view of the fact that their property is substantially used directly in the promotion of public charity, is unproductive of profit or gain, and is not when so used taxable, it was the policy of the legislature to exempt them from the burden of the inheritance tax. If their general property is exempt from taxation under existing statutes, general or special, bequests to them are not taxable merely because it appears that they own incidentally property that is taxable. Nor does it appear that the legislature intended that a legacy to a charitable association should be subject to the succession tax if, when received, it might be invested in taxable property. The sole test suggested by the language of the statute in its application to the subject-matter is to ascertain whether the legatee is a charitable, educational, or religious society, whose property, when used exclusively in carrying out the purposes of the association, is exempt from taxation. It is the character of the institution, the purposes it was organized to accomplish, and its liability or non-liability to taxation for property devoted to those purposes, that determine whether it falls

within or without the exception provided in the inheritance-tax law.

This result accords with the view adopted by the court in *First Universalist Society* v. *Bradford,* 185 Mass. 310, in which a construction was given to a statute of that state which is identical with the statute in question. With reference to the clause under consideration, the court say (*p.* 313) : " But we are of opinion that the exemption depends upon this question : Is the society or institution one whose property is generally exempt from taxation ; and that the question is not : Is the property which passes to the society or institution one which will be exempt from yearly taxation under general laws." This decision was rendered in 1904 ; and as our inheritance-tax law of 1905 was evidently copied from the Massachusetts statute, it is not improbable that that construction of the exception was understood by the legislature and adopted as a part of the statute. *Mann* v. *Carter, ante,* 345. If the legatee would be exempt from taxation upon property directly devoted to its public charity, it is not subject to the inheritance tax, though it in fact may own taxable property at the death of the testatrix and may intend to invest the proceeds of the legacy in taxable property.

But it is urged that the various associations which the testatrix sought to benefit by her legacies are not " charitable, educational, or religious societies or institutions," within the meaning of the statute. In view of what has already been decided in this opinion, it is plain that if they are charitable in their nature and objects, so that their property devoted exclusively to those objects is not taxable under section 1, chapter 66, Laws 1895, the legacies in question are not subject to the inheritance tax. By that statute it is provided that " so much of the real estate and personal property of charitable associations, corporations, and societies as is devoted exclusively to the uses and purposes of public charity " is " hereby exempted from taxation." The question is : Are these associations formed and conducted for the purpose of promoting public charities ? If they are, it will be unnecessary to inquire whether all or any of them might claim the benefit of the exemption on some other ground ; for it is not doubted that the statute of 1895 was intended to exempt public charitable bodies, as defined in the law, whether incorporated or not, from taxation upon their property devoted to public charity.

" Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity ; all gifts for the relief and comfort of the poor, the sick, and the afflicted ; and all gifts for the public convenience, benefit, utility, or ornament, in whatever manner the donors desire to have them applied."

2 Per. Tr., s. 687. In *Webster* v. *Sughrow*, 69 N. H. 380, it was held that a provision in a will, that the residue of the testator's estate shall be held by his executor and expended at his discretion for the saying of masses for certain persons, is a valid bequest to a charitable use; and the court quote with approval the following language from the opinion in *Jackson* v. *Phillips*, 14 Allen 539, 558: "A charity, in the legal sense, may be . . . defined as a gift to be applied, consistently with existing law, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government."

In *Gafney* v. *Kenison*, 64 N. H. 354, it was held that a provision in a will that the income of a certain fund shall be applied for the relief of the most destitute of the testator's relatives creates a valid charitable trust. For other cases illustrating the liberality of construction applied in upholding trusts as charitable, see: *Orford etc. Society* v. *Society*, 55 N. H. 463; *Goodale* v. *Mooney*, 60 N. H. 528; *Lovell* v. *Charlestown*, 66 N. H. 584; *Rolfe and Rumford Asylum* v. *Lefebre*, 69 N. H. 238; *Haynes* v. *Carr*, 70 N. H. 463; 2 Per. Tr., ss. 699–705. The legislative purpose to encourage charitable institutions is not to be thwarted by a strained, over-technical, and unnecessary construction, or by holding without evidence that a church society, as ordinarily organized and conducted, is not included in the legislative meaning of charitable institutions. In *Goodale* v. *Mooney*, *supra*, many of the questions which the plaintiff seeks to raise with reference to the charitable character of the defendant associations were disposed of in a single sentence. The court say (*p. 535*) that the testator "bequeathed to the Tilton and Northfield Congregational Society, $1,000; to the New Hampshire Home Missionary Society, $2,000; to the New Hampshire Bible Society, $500; to the Foreign Missionary Society, $500; to the New Hampshire Ministers' Widows' Society, $1,000; to the New Hampshire Conference Seminary at Tilton, $500,—total, $5,500; all of which must be regarded as charitable objects."

It is unnecessary to discuss in detail the special characteristics of each of the societies and organizations connected with the Main-street Methodist Episcopal Church. Their purposes are religious, educational, and philanthropic, and hence charitable. The fact that they may more directly benefit their members than those who are not members does not deprive them of their public character. *Webster* v. *Sughrow*, *supra*. Their funds are held

impressed with a public trust under the terms of their respective organizations. They are engaged in promoting, in various ways, public charities; and only those will be specifically referred to which seem to require special discussion.

The work of the Young Women's Christian Association, in accordance with the objects of its incorporation, includes the holding of gospel services, teaching English to foreigners, and furnishing food and lodging for women passing through the city, for which compensation is received from those who are able to pay. Its general object is religious and charitable, and its property exclusively devoted to that object would undoubtedly be exempt from general taxation under chapter 66, Laws 1895, if it were not for its special exemption by chapter 216, Laws 1907. It is therefore entitled to exemption from the inheritance tax. The Auxiliary of the Young Men's Christian Association is a society composed of women, whose object is to extend spiritual, intellectual, social, and financial help to the Young Men's Christian Association of Nashua. The purpose of the latter association, as set forth in its charter (Laws 1891, *c.* 213, *s.* 1), is to improve "the spiritual, intellectual, and social condition of the young men of Nashua," and its property to the amount of $25,000 is thereby exempted from taxation. There is no finding how it carries on its work, or what it in fact does as a religious or charitable body; but upon the assumption that its principal endeavor is to promote the spiritual and intellectual condition of young men, without pecuniary gain or profit to itself, it must be deemed to be a charitable institution, upon the same ground that a church is held to have that character; and the women's Auxiliary, which is in practical effect a branch of it, devoting all its means to promote the purposes of the men's organization, is a charitable body, for substantially the same reason that a Sunday school may properly be regarded as a subsidiary branch of the church society in carrying out its charitable purposes.

With reference to the Home for Aged Women, the argument that it is not a charitable corporation because its beneficiaries are required to turn over to the institution what property they possess, or because they are required to pay an established fee upon their admission, is based upon a narrow and erroneous view of public charity. It makes the test of the legal character of such an institution the fact that it does or does not receive some value in consideration of its admission of an inmate. It treats the arrangement as a purely business affair in which profit, and not charity, is the principal object of the institution. In other words, it makes the Home a mere boarding-house managed for profit. And herein is the obvious error of the contention. It is not man-

aged for profit. "The fact that its funds are supplemented by such amounts as it may receive from those who are able to pay wholly or entirely for the accommodation they receive does not render it the less a public charity. All sums thus obtained are held upon the same trust as those which are the gifts of pure benevolence." *McDonald* v. *Hospital*, 120 Mass. 432, 435. See, also: *Hewett* v. *Association*, 73 N. H. 556, 562, 563; *Matter of Will of Vassar*, 127 N. Y. 1. The Day Nursery for similar reasons has the same charitable character.

Nor does the fact that the benefits afforded by the Grand Army of the Republic, to which the Woman's Relief Corps of Nashua is auxiliary, are bestowed only upon those who have been soldiers, or upon their families, to the exclusion of all others, render the objects and purposes of either organization any the less charitable. That every one is not equally eligible to share the benefits directly is no reason why the public advantage is not promoted thereby. *Gafney* v. *Kenison*, 64 N. H. 354; *Webster* v. *Sughrow*, 69 N. H. 380. As the Relief Corps is an association of women in Nashua, which presumably extends its benevolence to veterans and their families in that immediate locality, its formal allegiance to a national organization incorporated in another state is immaterial upon the question whether it is a charitable society within the meaning of the statute. Its character in that regard is not changed by the fact of its dependency upon some other organization. If its charity is administered for the benefit of the public within this jurisdiction, it falls within the class which the legislature intended to favor and encourage.

When, however, an auxiliary body, like the Auxiliary of the Woman's Foreign Missionary Society, though connected with a local church and existing within the jurisdiction as an association, seeks as its principal object "the evangelization of heathen women" and the raising of funds for that purpose alone, it is difficult to discover how the public represented by the people of this state is benefited by the supposed benevolence. Even if there are "heathen women" in our midst, this society can do nothing for their enlightenment and civilization; for, as found in the case, none of its funds "are or can be devoted to charitable objects within the state of New Hampshire." Its money may be sent, and presumably the principal part of it is sent, to assist in the conversion of people, living in remote parts of the earth, from their native religion to that of Christianity. The expenditure of large sums of money for the enlightenment upon religious subjects of the natives of the antipodes evidently was not one of the objects the legislature intended to encourage, when in 1895 the property of charitable associations "devoted exclusively to the

uses and purposes of public charity" was exempted from taxation, or when in 1905 legacies to such associations "in this state" were exempted from the inheritance tax.    The benefit to the public of this state of such a trust is so visionary, problematical, and uncertain that it cannot be deemed for the purposes of this case a public charity, without imputing to the legislature motives which it is reasonably certain they did not entertain.    The state is not itself a charitable institution, and does not authorize its representatives to expend the public money, by exemptions from taxation or otherwise, for purposes having little or no relation to the welfare of the inhabitants of the state.    The purpose of such laws is the acquisition of some supposed public advantage.    *Opinion of the Court,* 58 N. H. 623; *Perry* v. *Keene,* 56 N. H. 514.    If it is impossible to see how the public good of the state is promoted by a claimed exemption from the tax burden, it cannot be inferred that the legislature intended such a result from language which does not necessarily require such a construction.    "If a statute is capable of two meanings, and one is more reasonable and therefore more probable than the other, this fact is necessarily considered, with all other competent evidence, on the question of intent.    The evidence of intention may include various inherent probabilities and the probative force of many circumstances, as well as the literal sense of the words used.    When the meaning is found by giving due weight to everything that legally tends to prove it, it is not a matter of discretion whether it shall be adopted or rejected.    If the evidence establishes the fact that the literal sense is not the true sense, a literal construction would be an alteration of the law."    *Opinion of the Justices,* 66 N. H. 629, 651.

In holding that general tax-exemption laws apply to domestic and not to foreign corporations, the court in *Matter of Estate of Prime,* 136 N. Y. 347, 362, say: "It is the policy of society to encourage benevolence and charity.    But it is not the proper function of a state to go outside of its own limits and devote its resources to support the cause of religion, education, or missions for the benefit of mankind at large."    And it is not to be inferred that the legislature undertook to encourage the accumulation of property in this state by foreign or domestic corporations or societies, whose only charitable purpose is to devote it exclusively to the use of religious missionaries for the conversion of the heathen in foreign lands.

The Home Missionary Society is also an auxiliary to a corporation organized in another state, and its object is, in subordination to the principal body, to assist "in the elevation and evangelization of needy and destitute women and children in our own land, and in raising funds for this work."    While it seeks to accomplish

religious, moral, and educational results, its field of operation is not confined to, though it may include, this state; and the question whether its charity is a public one which the legislature intended to promote may not be entirely free from doubt. As a matter of fact, a very small part of the funds of this local society is expended in this state; and it does not appear from the case whether it has the right, as between it and the parent society, to use its money for local purposes. As a matter of practice, it has devoted substantially all its funds to the support of charities outside of New Hampshire, and presumably it will continue that practice. If its object was to maintain an orphans' home or a hospital for poor people on the Pacific coast, and all its resources were devoted to that purpose, the public benefit of such a charity in New Hampshire would not be apparent. Perhaps it would be no more evident than the maintenance of missions in China. Its relation to the public interests of this state, which alone the legislature is ordinarily presumed to have in view, would be so slight, arising merely from a general community of interstate interests, that it is not probable such a charity would be the object of legislative bounty and encouragement. Nor should we expect to find the lawmakers exempting from the common burden of taxation a society whose purpose is, as established by long practice, to use its funds exclusively in the promotion of charities in other states. If some substantial local benefit accrues of a public nature by the actual use of some of its funds for charitable purposes in this state, it might be found that it was included within the exemption, though it used the balance of its funds in other jurisdictions. *Balch* v. *Shaw*, 174 Mass. 144. The question would be, whether its charity was of such a character and so administered as to be of any substantial benefit or advantage to the public of this state; and this would be principally a question of fact, to be determined upon competent evidence. But in the absence of such evidence, as in the case of this missionary society, the fact cannot be assumed, and it cannot be found, upon the facts reported, that the society is exempt from taxation.

*Case discharged.*

PEASLEE, J., did not sit: the others concurred.