IN THE MATTER OF THE ESTATE OF
EDWARD D. METCALF, DECEASED
BURT GRIGGS, ET AL. v. THEODORE THULE-
MEYER, INHERITANCE TAX
COMMISSIONER
(No. 1574; Nov. 12, 1929; 282 Pac. 27)

For the plaintiffs in error there was a brief by *C. A. Kutcher* of Sheridan, and *Burt Griggs* of Buffalo, and oral argument by *Mr. Kutcher*.

For defendant in error there was a brief by *W. O. Wilson,* Attorney General; *J. A. Greenwood,* Deputy Attorney General, and *Richard J. Jackson,* Assistant Attorney General, and oral argument by *Mr. Jackson.*

*C. A. Kutcher* and *Burt Griggs* in reply.

KIMBALL, Justice.

Under the will of Edward D. Metcalf, deceased, the American Genetic Association, of Washington, D. C., is entitled to an interest upon which the Inheritance Tax Commissioner assessed a tax of some $7500. On appeal to the District Court the tax was confirmed and ordered paid. The executors and the interested beneficiary bring the case here by proceeding in error.

The sole question is whether this testamentary gift is exempt from tax by Section 2 of the Inheritance Tax Law, Ch. 78, Laws of 1925. The statute exempts from the tax:

"Gifts for State, Municipal, Charitable, Educational or Religious purposes or to any institution for use in the preservation of wild fowls or game."

The American Genetic Association, a corporation of the District of Columbia, with headquarters at Washington, is engaged, without profit, in educational work, particularly in the advancement and diffusion throughout the United States of knowledge regarding the laws of heredity. The gift to it is "for the uses and purposes of increasing and diffusing knowledge regarding the laws of heredity." It is conceded that the gift is for educational purposes to a foreign educational corporation. There are no facts from which it can be inferred that the people of Wyoming will receive from the gift any benefit, except remotely by sharing in an assumed general benefit to mankind. Whether the gift be considered as one for educational purposes only,

or for both educational and charitable purposes, is immaterial, as the applicable rules of construction would be the same in either case.

The Tax Commissioner contends, and the District Court held, that the statute does not exempt bequests to a foreign corporation for use in carrying on educational work throughout the United States. Plaintiffs in error vigorously urge that such limitation of the words of the statute is unwarranted. Counsel on both sides have aided us with able arguments, and with briefs that exhaust the authorities which on some points are conflicting.

The plaintiffs in error invoke the general rule recognized by this court in Brennan v. Midwest Refining Co., 29 Wyo. 116, 120, 210 Pac. 939, and cases there cited: that the intent of the legislature is to be found in the language of the statute, and if the meaning of the language be plain, there is no room for construction. They concede that the rule may be departed from when a literal construction would lead to injustice, oppression or an absurd consequence. See, United States v. Kirby, 7 Wall. 482, 486, 19 L. Ed. 278. It is then contended that the language of the law of 1925 exempting gifts for educational purposes is so plain, and its literal construction and application so free from injustice, oppression or absurd consequences, that there is no room for judicial construction that would not be in effect judicial legislation.

But there is another principle by which general words are often limited in order that the law may conform to the legislative intent. An illustration is the case of Colquhoun v. Heddon, (1890) 25 Q. B. Div. 129, quoted from at length in Lewis' Suth. Stat. Const. Sec. 513. By the English Income Tax Act, provision was made for deduction of premiums on life insurance policies ''in or with any insurance company existing on the 1st of November, 1844, or in or with any insurance company registered pursuant to the Act 7 & 8 Vict. c. 110.'' The question was whether a deduction could be made of premium paid to a New York life

insurance company which came within the description, "any insurance company existing on the 1st of November, 1844." The court of appeal held that the words last quoted referred only to insurance companies over which parliament had jurisdiction, and a payment to a New York company could not be deducted. In the judgment of Lord Esher, M. R., he said:

"But it seems to me that our parliament ought not to deal in any way, either by regulation or otherwise, directly or indirectly, with any foreign person or thing which is outside its jurisdiction, and, unless it does so in express terms so clear that their meaning is beyond doubt, the courts ought always to construe general words as applying only to persons or things which will answer the description, and which are also within the jurisdiction of parliament."

And see, National Mut. B. & L. Ass'n., 79 Miss. 468, 30 So. 692, 31 So. 834, and State v. Holcombe, 85 Kan. 178, 116 Pac. 251, 50 L. R. A. (N. S.) 243 Ann. Cas. 1912 D, 800.

It may be conceded that this rule of construction must be applied cautiously and only in those cases where there are good reasons for presuming that the general terms in the act were used in a limited sense. See, Davidsson v. Hill, (1901) 2 K. B. 606. We think a review of the cases will show that such reasons exist in the case at bar.

The New York Collateral Inheritance Tax law of 1887 exempted legacies to "societies, corporations and institutions now exempted by law from taxation." In Catlin v. Trinity College, (1889) 113 N. Y. 133, 20 N. E. 864, 3 L. R. A. 206, it was held that the words "now exempted by law" referred to exemptions under New York laws. This case was followed in 1893, in Estate of Prime, 136 N. Y. 347, 32 N. E. 1091, 1095, 18 L. R. A. 713, holding also that the exemption was not extended to foreign corporations by an act of 1890. The court said, among other things:

"It is the policy of society to encourage benevolence and charity. But it is not the proper function of a state to go outside of its own limits and devote its resources to support the cause of religion, education or missions for the benefit of mankind at large."

The doctrine of the New York cases was approved in United States v. Perkins, 163 U. S. 625. It had been held (141 N. Y. 479, 36 N. E. 505) that the inheritance tax which the statute imposed on transfers of property "to persons or corporations not exempt by law from taxation on real or personal property" was due on a bequest to the United States, as it was not a domestic corporation. The Supreme Court of the United States, in affirming the decision, cited authorities holding that such exemptions are not applicable to foreign corporations, and, among other things, said:

"If the ruling of the Court of Appeals of New York in this particular case be not absolutely binding upon us, we think that having regard to the purpose of the law to impose a tax generally upon inheritances, the legislature intended to allow an exemption only in favor of such corporations as it had itself created, and which might reasonably be supposed to be the special objects of its solicitude and bounty."

In Matter of Balleis, (1894) 144 N. Y. 132, 38 N. E. 1007, the exemption under an act of 1892, was of transfers "to any religious corporation," without other qualifying words; yet it was held that the exemption did not include foreign religious corporations. The court quoted from the Prime case this:

"A statute of a state granting powers and privileges to corporations must, in the absence of plain indications to the contrary, be held to apply only to corporations created by the state and over which it has the power of visitation and control. * * * The legislature in such cases is dealing with its own creations, whose rights and obligations it may limit, define and control."

In closing the opinion in the Balleis case it was said:

"To say that it was intended to include foreign religious corporations, would be to imply the grant of a privilege by the legislature, without sufficient indications of an intention so contrary to ordinary state policy and to usual statutory presumptions. This we should not do. The legislation in question dealt with property within the state and imposed a tax, in certain cases, upon its transfer to other persons, or to corporations. In proceeding, thereupon, to confer the privilege of an exemption from its provisions, in the case of any religious corporation, the legislature must be deemed to have in mind those corporations which were the creation of the state and not those in which it had no interest and over which it had no control. *  *  * It is our opinion that the correct and the natural construction of this provision of the act of 1892 is to confine its operation to religious corporations created by the state."

For reasons stated in the foregoing quotations, the rule as to exemption of charities and the like from inheritance taxes- under statutes of New York seems to be that "such exemptions are confined to domestic corporations, unless foreign charitable corporations are specified." In re Burnham's Estate, 183 N. Y. S. 539, 543. The same rule obtains in other states.

In Minot v. Winthrop, (1894) 162 Mass. 113, 126, 38 N. E. 512, 26 L. R. A. 259, the Massachusetts court, following the New York decisions in the Catlin and Prime cases, held that an exemption to charitable societies and institutions "the property of which is exempt by law from taxation," was confined to societies whose property was exempt from taxation by the laws of Massachusetts.

After the decision of Minot v. Winthrop, an additional exemption of "bequests to towns for any public purpose," was added by Ch. 307 Mass. Acts of 1895, and continued by Act of 1906, Ch. 436, with a slight change in the language, but still without any words limiting the exemption to local cities and towns. In 1909, by declaratory act, it was provided that the exemption of bequests to "a city or

town for public purposes'' should be an exemption to ''a city or town within the Commonwealth for public purposes.'' In Davis v. Treasurer etc., 208 Mass. 343, 94 N. E. 556, it was held that the act of 1909 made no change in the law, and that ''the contention that originally it was intended to exempt gifts to cities or towns outside the Commonwealth, would have been a hopeless one.'' A reason was found in the fact that the ground for the exemption was ''the benefit that accrues to the public from the use of that which is exempted,'' citing Estate of Prime, supra, and Carter v. Whitcomb, infra.

Alfred University v. Hancock, (1900) 69 N. J. Eq. 470, 46 Atl. 178, arose under a law of 1894, that exempted bequests to ''churches, hospitals and orphan asylums, public libraries, Bible and tract societies, and all religious, benevolent and charitable institutions and organizations;'' and under an amendment of 1898 exempting bequests to certain Bible and tract societies and religious institutions whether organized under the laws of New Jersey or of some other state. The bequest in question was to Alfred University which was held to be a charitable institution. It was decided, after a review of practically all the earlier cases, that the University, because it was a corporation and institution situated in the state of New York, was not entitled to exemption under the law of 1894, and, for other reasons, not entitled to exemption under the amendment of 1898.

The case of Humphreys v. State, (1904) 70 Oh. St. 67, 70 N. E. 957, 65 L. R. A. 776, dealt with an exemption to ''any institution in this state for purposes of purely public charity'' etc. It was held that foreign corporations, though doing charitable work in Ohio, were not in the state within the meaning of the statute. The court, after reviewing cases including some to which we have referred, remarked that:

"From the foregoing cases, we see that the exemptions of charitable institutions, would relate only to domestic institutions of that class, even if words 'in the state' had been omitted from the statute."

In Carter v. Whitcomb, (1908) 74 N. H. 482, 69 Atl. 779, 17 L. R. A. (N. S.) 733, the exemption in question was of property passing to charitable etc. "institutions in this state the property of which is by law exempt from taxation." Certain of the legatees claiming exemptions were held to be entitled thereto if their charities were administered for the benefit of the public within the state. It was said that the purpose of such exemptions "is the acquisition of some supposed public advantage;" that "the state is not itself a charitable institution, and does not authorize its representatives to expend the public money, by exemption from taxation or otherwise, for purposes having little or no relation to the welfare of the inhabitants of the state." In denying exemption to one of the legatees, the court remarked that, "its relation to the public interests of the state which alone the legislature is ordinarily presumed to have in view, would be so slight, arising merely from a general community of interstate interests, that it is not probable such a charity would be the object of legislative bounty and encouragement."

The statute of Illinois, considered in Estate of Speed, (1905) 216 Ill. 23, 74 N. E. 809, 108 Am. St. Rep. 189, contained the broad exemption of interests passing to or for the use of "any hospital, religious, * * *, benevolent or charitable purpose." The court held that the exemption did not apply to a legacy passing to a foreign corporation, citing, among other authorities, Matter of Balleis, supra, and Humphrey v. State, supra. When this case was before the United States Supreme Court, (203 U. S. 553) it was contended that while the decision of the Illinois court was not limited to corporate takers or users, the power of state visitation and control over corporations was made a test of taxability or non-taxability. In discussing this conten-

48

tion, the court said (203 U. S. 562) that "the case presented especially a comparison of rights of corporations, but the decision was broad enough to consider natural persons;" that, while the Illinois court took into account the greater control and direction the state had over domestic than over foreign corporations, it did not put out of view the uses of property as expressed in the statute, nor ignore the consideration that there was no necessity for a corporate agency to execute those uses. In closing the opinion in the United States Court, it was remarked (p. 563):

"And it cannot be said that if a State exempts property bequeathed for charitable or educational purposes from taxation it is unreasonable or arbitrary to require the charity to be exercised or the education to be bestowed within her borders and for her people, whether exercised through persons or corporations."

The Speed case has been consistently followed in Illinois. See, People v. Illinois etc. Trust Co., 328 Ill. 223, 159 N. E. 266, and cases cited.

State v. Holcomb, (1911) 85 Kan. 178, 116 Pac. 251, 50 L. R. A. (N. S.) 243, Ann. Cas. 1912 D, 800, is not an inheritance tax case, but is pertinent as regards the rule of construction of laws containing general terms that, without construction, would include foreign corporations. A provision of the constitution of Kansas exempted from taxation property used "exclusively for * * * municipal purposes." It was held that the exemption must be limited to such persons and subjects as it was reasonable to presume it was intended to apply, and that it was not intended to exempt property used for municipal purposes by a foreign corporation.

The Holcomb case is cited as authority for the decision in Morgan v. Atchison, etc. R. Co., (1924) 116 Kan. 175, 225 Pac. 1029, 34 L. R. A. 625, a case which brought in question an exemption in the inheritance tax law of property passing to or for the use of "educational * * *

charitable societies and institutions: Provided, such use entitle the property so passing to be exempt from taxation.'' Property was bequeathed to trustees to be used to establish and maintain a children's home and school in Ohio. The court held that the bequest was not exempt. Counsel for plaintiffs in error says that this case is not in point, claiming that the proviso makes the meaning of the statute clear. The court's opinion, however, does not seem to attach any weight to the proviso, but apparently concedes that California, Louisiana and Kentucky cases, that are relied on by plaintiffs in error in the case at bar, are contrary to the views controlling the Kansas decision. The decision seems to be based on considerations expressed in the following remarks which we quote:

"Exemption to charitable, educational, and religious organizations is bottomed upon the fact that they render service to the state, for which reason they are relieved of certain burdens of taxation. * * * It cannot be said to have been the intent of the Legislature to make appropriation for the benefit or maintenance of foreign charities which, at best, have a remote chance only of benefiting the citizens of this state.''

In re Estate of Quirk, (1914) 257 Mo. 422, 165 S. W. 1062, 51 L. R. A. (N. S.) 817, it was held that an exemption of bequests of ''property conveyed for some educational, charitable or religious purpose exclusively,'' did not include a bequest to an educational and religious organization located outside of Missouri. It is conceded that this case cannot be distinguished from the case at bar, and it supports practically every contention made by the defendant in error, on reasons similar to the reasons advanced in support of decisions in the earlier cases. While in most of the statutes considered in the cited cases the exemption in terms referred to corporations or institutions, the statutes of Illinois and Missouri considered in the Speed and Quirk cases, exempted property passing for the charitable ''purposes,'' as in the statute of Wyoming. When counsel in

the Quirk case undertook to distinguish the Missouri stat-
ute from statutes mentioning corporations or institutions,
the Missouri court remarked that "there is no deep-seated
meaning in the word 'purposes' in our act."

Until the year 1917 there was no case that seemed to
question the authority of any of the cases cited above. It
was apparently well settled that an exemption of gifts to
charitable or educational institutions by general language
which, taken literally, was broad enough to include both
local and foreign institutions, but without specific mention
of the latter, did not exempt gifts to foreign corporations,
or societies, except, possibly, when it was made to appear
that the people of the state would receive some special or
particular benefit from the gift.

The first case opposed to the doctrine of the above cases,
is In re Frain, (1917) 141 La. 932, 75 So. 847, which clearly
supports the contention of the plaintiffs in error. The
Louisiana law of 1906 exempted any legacy "to or in favor
of an educational, religious or charitable institution," and
it was held to grant exemption to a religious corporation of
France. Several of the cases we have cited were considered
by the Louisiana court, and cited in the opinion. All, ex-
cept the Speed case, were distinguished because of the
wording of statutes on which they were decided. The opin-
ion, however, makes no mention of the New York case, Mat-
ter of Balleis, of the Massachusetts case, Davis v. Treasurer
etc., nor of the Missouri case, Estate of Quirk, each decided
under a statute which we think was equally as broad as that
of Louisiana.

The Louisiana case was followed in Matter of Fiske, 178
Calif. 116, 172 Pac. 390, which also supports the contention
of plaintiffs in error. The California court, considering an
exemption statute which used very comprehensive general
words, held that it was intended to exempt legacies to for-
eign educational and charitable corporations. The court
said it was deemed unnecessary to discuss "numerous deci-
sions of other states, in which laws more or less similar to

ours are construed to mean that domestic corporations are exempt and foreign corporations taxed.''

In Harvard College v. State, (1922) 106 Oh. St. 303, 140 N. E. 189, it was held that an exemption of bequests ''to public institutions of learning'' applied to a bequest to such an institution located without the state. This was on the ground that the statute was too plain to require judicial construction. The earlier cases were not discussed or even referred to.

In Sage's Executors v. Commonwealth, (1922) 196 Ky. 257, 244 S. W. 779, 780, an exemption from inheritance being claimed by foreign educational and charitable institutions, it was said by the court that, under all the authorities cited by both sides, the claimed exemption should not be allowed unless such an intention on the part of the legislature was plainly expressed. The statute in question in that case exempted bequests to five classes. The first class was ''any municipal corporation *within this state* for public purposes.'' In describing the other classes, which included educational and charitable institutions, the words ''within this state'' were omitted. It was because of the significance of this omission that the court held that the bequests in question were exempt. This case seems clearly distinguishable from the case at bar.

The case of Maynes' Estate, (1922) 118 Wash. 644, 204 Pac. 596, considered only the question whether a bequest to the City of Philadelphia was for a charitable purpose. That question being decided in the affirmative, it was apparently and without any discussion assumed that the bequest was exempt.

It is a fact of some interest, although we do not care to base an argument on it, that the statutes of Louisiana, California, Ohio and Kentucky, have all been so amended as to avoid the effect of the decisions on which plaintiffs in error rely. La. Act 127 of 1921, Sec. 1; Calif. Stat. 1917, Ch. 589, Sec. 6; Ohio Gen. Code Sec. 5334 as amended Laws 1923, p. 26; Ky., Baldwin Stat. Service, 1928, p. 613.

We believe the principle announced in the decisions first discussed are founded on good reasons and calculated to result in an interpretation of the statute that will carry out the intention of the legislature. Under those decisions it has been, and ought still to be, well understood that if the legislature in exempting charities from inheritance taxes intends to include foreign charities, it will make specific mention of them. We do not think the arguments in support of those decisions have been proved fallacious, nor a better result reached, by other cases that have given to such statutes a literal construction.

The inheritance tax law exempts from tax a portion of estates passing to certain natural heirs. Plaintiffs in error argue that any principle that would deprive a foreign charitable organization of the right of exemption would apply with equal force to such heirs who happened to be non-residents. In answer to this contention, it is sufficient to say that the exemption to heirs is not based, nor presumed to be based, on any supposed public benefit to the people of the state. The reasons for presuming that general words descriptive of public charities do not include foreign charities would not necessarily apply in the construction of other exemptions.

The first inheritance tax law, enacted in 1903, contained no provision for exemption of gifts for charitable or educational purposes. Ch. 180, C. S. 1920. A separate act of 1915, which became Section 5408, C. S. 1920, provided for exemption of certain gifts for education of youths of the state. In 1921 a new law covering the whole subject and repealing the law of 1903, was enacted. It exempted property passing "to or for the use of charitable, educational or religious societies or institutions, the property of which is by the laws of the state of Wyoming, exempt from taxation, or for or upon trust for any charitable purposes to be carried out within the state of Wyoming, or to or for the use of the state of Wyoming or any town therein for public purposes." Sec. 2, Ch. 126, Laws of 1921. In 1923 several

sections, including Section 2, of the law of 1921, were amended and re-enacted, but the new law retained the language of the former law, which it is conceded was clearly intended to exempt only gifts for charitable and educational purposes in the state. Sec. 2, Ch. 80, Laws of 1923. The next change is by the law of 1925, which is applicable to the case at bar. Ch. 78, Laws 1925. This law covers the whole subject, repeals the laws of 1921 and 1923, and contains the exemption quoted at the beginning of this opinion.

Thus, from 1903, the time of the first law, until 1925, it was always clear by the language used in the statutes that there was no intention to exempt gifts for foreign charitable or educational purposes. By the law of 1925 there was a pronounced change in the language providing for the exemption. Plaintiffs in error argue that this change in phraseology shows clearly the legislative intention in 1925 to exempt gifts for foreign educational purposes. The invoked rule is discussed in Section 401, Lewis' Sutherland, Stat. Const., where it is said that the presumption of a change of intention from a change of language is of no great weight. The presumption, of course, is much stronger when the change of language is made in amendment, than when made in a revision of the law. 36 Cyc. 1166; 25 R. C. L. 1050. The law of 1925, as already indicated, appears to be a revision of the whole law on the subject, and the presumption is of little weight. Besides, this presumption seems in the case at bar to run counter to another, stated in Lewis' Sutherland, p. 931, thus: "It is presumed, in the construction of general words or dubious provisions, that there is no intention to depart from any established policy of the law." See, 25 R. C. L. 971.

It is argued that the state's policy for twenty-two years was to exact the tax on gifts to foreign charities, and if the legislature in 1925 intended to change that policy, we should expect to find in the new act something more than general words. Examples of statutes that show clearly such a change in policy are the New York statute quoted in

Burnham's Estate, 183 N. Y. S. 539, and the amendment of 1898 quoted in Alfred University v. Hancock, 69 N. J. Eq. 470, 474, 46 Atl. 178. We are not prepared, however, to assert that the presumption last referred to, in the absence of other considerations, would furnish a sufficient reason for limiting the meaning of the general words of the act.

Another consideration suggested by the phraseology of the act is perhaps more important in this case than either of the presumptions just mentioned. The language of the exemption, if given the literal meaning for which plaintiffs in error contend, would include gifts for foreign state and municipal purposes and also to any foreign institution for use in the preservation of wild fowls or game. To say that the legislature intended to favor gifts for the benefit of foreign states and cities, or to protect wild game, in Africa perhaps, would border on the absurd.

As we think the District Court rightly decided that the tax should be collected on the testamentary gift in question, the judgment will be affirmed.

*Affirmed.*

BLUME, Ch. J., and RINER, J., concur.