IN RE ESTATE OF EDWARD S. ROBINSON.
YALE UNIVERSITY, APPELLANT, V. SCOTTS BLUFF COUNTY, APPELLEE.

292 N. W. 48

FILED MAY 10, 1940. No. 30795.

William Morrow and Russell E. Lovell, for appellant.

Frank Glebe and Willard F. McGriff, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

EBERLY, J.

In this case, Yale University, a Connecticut corporation, appeals from the decision of the district court for Scotts Bluff county, which denied the appellant's claim for exemption from the payment of inheritance taxes on its interests in certain Nebraska lands devised to it by the terms of the last will of Edward S. Robinson, deceased. These lands, by the terms of the will of the deceased, upon the termination of the life estate created thereby, were given, devised, and bequeathed "to Yale University, of New Haven, Connecticut; to be its absolutely." The intestate died on February 27, 1937, and his will was duly admitted to probate on July 17, 1937. Upon the probate of the will an appraiser for inheritance tax purposes was appointed by the county judge of Scotts Bluff county, who determined that the share of the devised lands taxable to Yale University was $73,786, and that the inheritance tax, if levied, would amount to $7,154.32 with interest at 7 per cent. per annum from February 27, 1937. On February 6, 1939, the county court denied appellant's claim for exemption as an educational institution under section 77-2201, Comp. St. 1929, as revised in 1931 (Laws 1931, ch. 132) and on that basis levied the inheritance tax complained of. On appeal to the district court, that court affirmed the levy of the inheritance tax as against Yale University, and denied its claim of exemption as an educational institution under such section 77-2201, Comp. St. 1929, as amended.

Appellant's appeal to this court challenges the correctness of the order thus made on the sole ground that it is a corporation organized and operated exclusively for educational purposes without pecuniary gain, and thus is within the protection of the proviso which was added as an amendment to section 77-2201, Comp. St. 1929, by chapter 132 of the session laws of 1931. This proviso is in the following terms, viz.:

"*Provided further*, that all bequests, legacies, devises, or gifts, to or for the use of any corporation, organization, association or foundation organized and operated exclusively for religious, charitable or educational purposes, no part of which is owned or used for financial gain or profit to either the owner or user or inures to the benefit of any private stockholder or individual, or to a trustee or trustees exclusively for such religious, charitable or educational purposes, shall not be subject to any duty or tax, and no such duty or tax shall be assessed or collected after the taking effect of this act irrespective of the time of the death of the decedent or the fact of the pendency of his or her estate."

Appellant insists on the general rule repeatedly announced by this court that, where the words of a statute are plain, direct and unambiguous, no interpretation is needed to ascertain their meaning; a mere reading will suffice. *Stoppert v. Nierle*, 45 Neb. 105, 63 N. W. 382; *State v. Heupel*, 114 Neb. 797, 210 N. W. 275; *State v. Life Ins. Co. of North America*, 71 Neb. 320, 99 N. W. 36; *In re Estate of Bayer*, 116 Neb. 670, 218 N. W. 746. And further insists that it is the duty of the court to discover, if possible, the legislative intent from the language of the act (*State v. City of Lincoln*, 101 Neb. 57, 162 N. W. 138) ; and that the statute under consideration is so clear and unambiguous on its face as to preclude any construction whatever by the trial court (*Shamp v. Landy Clark Co.*, 134 Neb. 73, 277 N. W. 802; *State v. First State Bank of Alliance*, 122 Neb. 502, 240 N. W. 747). As applied to the instant case, appellant's contention obviously ignores the situation where two or more statutes are each clear and unambiguous, and each includes

in whole or in part the subject-matter involved, but their terms are mutually inconsistent or conflicting. Likewise, no account is taken of the inherent limitation to which legislative power is properly subjected.

As to the first situation suggested, the rule has been authoritatively expressed in the following language, viz.: "Where there are different statutes *in pari materia,* though made at different times, or even expired or repealed, and not referring to each other, and though using different language, they shall be taken and interpreted together as one system and as explanatory of each other. Whatever has been determined in the interpretation of one of several statutes *in pari materia* is a sound rule of interpretation for the others." Beal, Cardinal Rules of Legal Interpretation (2d ed.) 351. See, also, *Campbell v. Youngson,* 80 Neb. 322, 114 N. W. 415; *Updike v. City of Omaha,* 87 Neb. 228, 127 N. W. 229.

The legislature must be presumed to have had in mind all previous legislation upon the subject, so that in the construction of a statute the court must consider the preexisting law and any other acts relating to the same subject, and especially passed at the same session of the legislature. *Nebraska District of Evangelical Lutheran Synod v. McKelvie,* 104 Neb. 93, 175 N. W. 531, 7 A. L. R. 1688.

There is, however, another principle by which general words of a statute are limited in order that the law may conform to legislative intent. Judge Sutherland thus expresses this view: "An act of parliament provided that the premiums paid on life insurance in certain companies might be deducted from the assessment for the income tax. A later statute extended this privilege to any person insured 'in or with *any insurance company existing on the first day of November, 1844,*' or in or with any insurance company registered pursuant to a certain act. It was held that the words in italics did not include a foreign insurance company in existence on the date specified. Lord Esher, M. R., in course of his opinion, said: 'Now, supposing the words "any insurance company" stood alone, and there were nothing

else in the section to modify the view which one would take of their meaning, would it or would it not be right to say that those words in an English act of parliament would include all foreign insurance companies, wheresoever they might be? What is the rule of construction which ought to be applied to such an enactment, standing alone? It seems to me that, unless parliament expressly declares otherwise, in which case, even if it should go beyond its rights as regards the comity of nations, the courts of this country must obey the enactment, the proper construction to be put upon general words used in an English act of parliament is, that parliament was dealing only with such persons or things as are within the general words and also within its proper jurisdiction, and that we ought to assume that parliament (unless it expressly declares otherwise), when it uses general words, is only dealing with persons or things over which it has properly jurisdiction. It has been argued that that is so only when parliament is regulating the person or thing which is mentioned in the general words. But it seems to me that our parliament ought not to deal in any way, either by regulation or otherwise, directly or indirectly, with any foreign person or thing which is outside its jurisdiction, and, unless it does so in express terms so clear that their meaning is beyond doubt, the courts ought always to construe general words as applying only to persons or things which will answer the description and which are also within the jurisdiction of parliament. If, therefore, those words stood alone, I should be of opinion that the insurance companies mentioned must be insurance companies over which our parliament has jurisdiction, and that the section should be confined to such companies.' " 2 Lewis' Sutherland, Statutory Construction (2d ed.) pp. 951, 952. See, also, *People v. Butler Street Foundry & Iron Co.,* 201 Ill. 236, 66 N. E. 349; *McCullough v. Virginia,* 172 U. S. 102, 19 S. Ct. 134, 43 L. Ed. 382; *National Mutual Bldg. & Loan Ass'n v. Burch,* 124 Mich. 57, 82 N. W. 837; *State v. Holcomb,* 85 Kan. 178, 116 Pac. 251.

In line with the principles above announced, Justice

Cooley employs the following language: "The exemption of charitable societies generally (from inheritance taxes) does not extend to charitable institutions located in other states. Foreign corporations ordinarily are not included in the exemption. An exemption of religious, educational and charitable 'corporations,' without more, does not extend to foreign corporations of such character, but is limited in its operation to corporations created by the state enacting the statute. 'It is a universally accepted rule of construction,' says the supreme court of Illinois, 'that an act of the general assembly of a state granting powers, privileges or immunities to corporations must be held to apply only to corporations created under the authority of that state over which such state has the power of visitation and control, unless the intent that the act shall apply to other than domestic corporations is plainly expressed in the terms of the act.' It has been held, however, that a religious corporation, chartered in different states, among them New York, is a domestic corporation in the latter state and as such exempt from the operation of the New York transfer law, notwithstanding the fact that the will, in naming the corporation, also names its principal office which is in one of the other states. Foreign charitable corporations may be required to pay a collateral inheritance tax, even though charitable corporations of domestic origin are exempt therefrom, without violating the Fourteenth Amendment to the Federal Constitution. The uniformity clause is not violated by exempting domestic but not foreign corporations from the tax on devises or bequests for charitable purposes." 4 Cooley, Taxation (4th ed.) pp. 3472-3474.

It appears that a majority of the states which have adjudicated the question adhere to the view that tax exemption to charitable and educational institutions is confined, in the absence of express provision to the contrary, to domestic corporations. Blakemore & Bancroft, Inheritance Taxes, sec. 257; Gleason & Otis, Inheritance Taxation (3d ed.) 229 *et seq.*

See, also, *Matter of Estate of Prime*, 136 N. Y. 347, 32

N. E. 1091; *Board of Education v. Illinois,* 203 U. S. 553, 27 S. Ct. 171, 51 L. Ed. 314; *In re Estate of Speed,* 216 Ill. 23, 74 N. E. 809; *Morgan v. Atchison, T. & S. F. Ry. Co.,* 116 Kan. 175, 225 Pac. 1029, 34 A. L. R. 625; *Griggs v. Thulemeyer,* 41 Wyo. 36, 282 Pac. 27; *Carter v. Whitcomb,* 74 N. H. 482, 69 Atl. 779; *People v. O'Donnell,* 327 Ill. 474, 158 N. E. 727; *Humphreys v. State,* 70 Ohio St. 67, 70 N. E. 957; *In re Estate of Quirk,* 257 Mo. 422, 165 S. W. 1062; *In Matter of Estate of Hall,* 337 Mo. 658, 85 S. W. (2d) 621; *Minot v. Winthrop,* 162 Mass. 113, 38 N. E. 512.

The underlying doctrine on which these authorities largely rest was well expressed by the supreme court of Missouri in the case of *In re Estate of Quirk, supra,* in the following language, viz.:

"The general doctrine seems to be that *prima facie* the law should be held to have reference to persons and things within the territorial jurisdiction of the body enacting it, unless it clearly appears that another and different purpose should be gathered from the act itself. Presumptively the lawmaking power is acting in the interest of persons and things within the state. Presumptively the lawmakers in this case were looking after the interests of Missouri, and not legislating for charities in other states, and especially is this so when they were unloosing our own purse strings by this exemption clause. It means, if given the construction urged by the respondent, that a Missouri lawmaking body was releasing its hold upon a source of revenue for charities outside of the state. To give it that construction, would in effect be to say that the lawmaking body was taking Missouri money to support foreign charities."

It is the view of a majority of the adjudicated cases that the reason or basis for conferring exemption from taxation on educational corporations by legislative provision is the fact that such institutions render service to the state in consideration of which they are relieved of certain tax burdens. *Davis v. Treasurer & Receiver General,* 208 Mass. 343, 94 N. E. 556; *Carter v. Whitcomb, supra; People v. O'Donnell, supra; Morgan v. Atchison, T. & S. F. Ry. Co.,*

*supra.* It is quite obvious that this reason usually assigned as the basis for this legislation is, in Nebraska, wholly inapplicable to foreign corporations, not only because of their nonresidence in the state, but as being incompatible with the clearly announced policy of this state. In principle, the question presented in the instant case is one of first impression. However, the conclusions announced by Good, J., in the case of *In re Estate of Rudge,* 114 Neb. 335, 207 N. W. 520, seem to be applicable and controlling in the present controversy, viz.:

"It is a familiar rule that statutes exempting property from taxation should be strictly construed, and one contending that his property is exempt from such tax must show clearly that he is within the exceptions provided by statute. *Young Men's Christian Ass'n v. Douglas County,* 60 Neb. 642; *Watson v. Cowles,* 61 Neb. 216; *House of the Good Shepherd v. Board of Equalization,* 113 Neb. 489. The same rule should be applied to a statute exempting certain legacies from an inheritance tax. To be exempt from an inheritance tax, a legacy must come within the strict letter of the statute. A careful examination of the statute under consideration does not disclose that a legacy to a religious or charitable society is exempt from an inheritance tax." See, also, *In re Estate of Wheeler,* 119 Neb. 344, 228 N. W. 861.

True, the amendment of 1931 was adopted subsequent to the announcement of the opinion in the *Rudge* case just quoted from, and instead of a legacy the devise here under consideration is the fee simple title to Nebraska real estate. As to the succession of foreign corporations to title to Nebraska real estate, the regulating statute which unmistakably determines our public policy in relation thereto at the time the claimed rights of the appellant were acquired is to be found in section 76-502, Comp. St. 1929. This section expressly declares, in part, viz.: "Aliens and corporations not incorporated under the laws of the state of Nebraska are hereby prohibited from acquiring title to or taking or holding any land, or real estate, or any leasehold interest extending for a period for more than five years or any other

greater interest less than fee in any land, or real estate in this state by descent, devise, purchase or otherwise, only as hereinafter provided."

This court has interpreted the entire statute, including the part thereof just quoted, as denying to foreign corporations, whether charitable or educational, the right to succeed to the title of Nebraska real estate by the method here employed, and the title so acquired is apparently subject to escheat to the state of Nebraska. *Gould v. Board of Home Missions*, 102 Neb. 526, 167 N. W. 776; *Stork v. Evangelical Lutheran Synod*, 129 Neb. 311, 261 N. W. 552; *Lord v. Shultz*, 115 Neb. 33, 211 N. W. 210.

Certainly, under these circumstances, Yale University, a foreign corporation, cannot assume the rights of exemption from inheritance taxes assessed as a favorite of our revenue laws. It cannot claim an exemption on property which it has actually taken and actually holds, but as to which the public policy of the state denies it the power to take or possess. True, the state alone may question the claim of title thus made (*Lord v. Schultz, supra*), but can the failure of the appropriate officers of the state to enforce its laws and public policy operate to vest the foreign corporation with even greater powers than were possible under the declared policy of the legislative enactment as applied to the actual transaction in suit? It would seem that a claim of tax exemption must be founded upon or arise out of a valid transaction. We do not decide the question thus presented. We determine only the issues actually presented by the pleadings and argued by the parties.

On this basis, we find that the tax exemption claimed is one to which appellant, as a nonresident corporation, is not entitled.

It follows that the judgment of the district court is correct, and it is

AFFIRMED.

CARTER, J., dissenting in part.

I agree that a foreign corporation is not entitled to exemption from the payment of inheritance taxes, even though

it is an educational institution. This is the only issue in the case. The escheat statute, discussed in the majority opinion, was not raised by the pleadings, and consequently has no proper place in the opinion. Assuming, however, that this question was raised and the escheat statute properly interpreted in the majority opinion, then this court ought to hold that an assessment of an inheritance tax could not properly be made on property which has escheated to the state. This would necessarily result in the reversal of the case. The effect of the majority opinion as written is to prejudge a possible issue between parties who are not before us in this litigation.

It appears to me that this court should limit its decisions to issues properly before it, and carefully refrain from deciding feigned issues not raised by the pleadings or evidence. To do otherwise merely adds to the body of dicta and unauthoritative statements which already grace our reports.