RAYMOND BURGESS, ON BEHALF OF HIMSELF AND ALL OTHER PERSONS SIMILARLY SITUATED v. JOSEPH SCHLITZ BREWING COMPANY

No. 7821SC249

(Filed 16 January 1979)

1. Master and Servant § 1— handicapped persons—visual disability

The term "visual disability" as used in G.S. 168-1 includes persons with visual impairments less serious then the "visually handicapped" defined in G.S. 111-11, i.e., those who are totally or functionally blind.

2. Master and Servant § 1— refusal to hire person with glaucoma—cause of action

Plaintiff's complaint alleging that he was denied employment because he has simple glaucoma without any consideration of whether his disability would materially impair his job performance stated a cause of action to enforce rights accruing under G.S. Chapter 168 and the N. C. Constitution. G.S. 168-6.

APPEAL by plaintiff from *McConnell, Judge.* Judgment entered 7 February 1978 in Superior Court, FORSYTH County. Heard in the Court of Appeals in Winston-Salem 5 December 1978.

Plaintiff sought employment from defendant, and had been requested to report for a pre-employment physical by the defendant's doctor. At the examination, plaintiff informed the doctor that he had simple glaucoma, a chronic disease of the eyes, which was under control, by use of drugs and regular medical care, and that his vision with eyeglasses was corrected to 20/20. When defendant was apprised of these facts, plaintiff was informed that

company policy did not allow the hiring of anyone with such a disability and that he would not be hired.

Plaintiff brought this action on his behalf and on behalf of all those similarly situated, contending that the discrimination he allegedly suffered was not directed at him as an individual but was representative of the corporate defendant's policy of refusing to hire individuals with certain disabilities without regard to whether such disabilities impaired or would impair the ability of those individuals to perform the jobs for which they were applying. Plaintiff's action is premised upon the contention that he is a "handicapped person" within the meaning of G.S. 168-1 and is entitled to the protection of G.S. 168-6. Defendant filed a motion to dismiss on the grounds that plaintiff was not a "handicapped person" within the meaning of the statute.

This motion was granted by the trial judge, and from his order dismissing the action plaintiff appeals, assigning error.

*Pfefferkorn & Cooley, by William G. Pfefferkorn, Jim D. Cooley and J. Wilson Parker, for the plaintiff.*

*Womble, Carlyle, Sandridge & Rice, by Charles F. Vance, Jr. and W. Andrew Copenhaver, for the defendant.*

MARTIN (Robert M.), Judge.

The sole question presented to us by this appeal is the sufficiency of plaintiff's complaint. Crucial to our consideration of this issue is the interpretation of G.S. 168-1 and related statutes dealing with handicapped persons. The complaint alleged that the plaintiff had been denied employment solely because of his glaucoma, that the defendant had a long-standing policy of denying employment to persons situated similarly to himself, and that his disability did not impair his ability to perform job duties.

We quote the pertinent statutes below:

§ 168-1. Purpose and definition. — The State shall encourage and enable handicapped persons to participate fully in the social and economic life of the State and to engage in remunerative employment. The definition of "handicapped persons" shall include those individuals with physical, mental and visual disabilities. For the purposes of this Article the definition of "visually handicapped" in G.S. 111-11 shall apply. (1973, c. 493, s. 1.)

§ 168-2. Right of access to and use of public places. —Handicapped persons have the same right as the ablebodied to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and all other buildings and facilities, both publicly and privately owned, which serve the public. (1973, c. 493, s. 1.)

§ 168-3. Right to use of public conveyances, accommodations, etc. —The handicapped and physically disabled are entitled to accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motor buses, streetcars, boats, or any other public conveyances or modes of transportation; hotels, lodging places, places of public accommodation, amusement or resort to which the general public is invited, subject only to the conditions and limitations established by law and applicable alike to all persons. (1973, c. 493, s. 1.)

§ 168-6. Right to employment. —Handicapped persons shall be employed in the State service, the service of the political subdivisions of the State, in the public schools, and in all other employment, both public and private, on the same terms and conditions as the ablebodied, unless it is shown that the particular disability impairs the performance of the work involved. (1973, c. 493, s. 1.)

§ 168-8. Right to habilitation and rehabilitation services. —Handicapped persons shall be entitled to such habilitation and rehabilitation services as available and needed for the development or restoration of their capabilities to the fullest extent possible. Such services shall include, but not be limited to, education, training, treatment and other services to provide for adequate food, clothing, housing and transportation during the course of education, training and treatment. Handicapped persons shall be entitled to these rights subject only to the conditions and limitations established by law and applicable alike to all persons. (1973, c. 493, s. 1.)

§ 168-9. Right to housing. —Each handicapped citizen shall have the same right as any other citizen to live and reside in residential communities, homes, and group homes, and no person or group of persons, including governmental bodies or political subdivisions of the State, shall be permitted, or

have the authority, to prevent any handicapped citizen, on the basis of his or her handicap, from living and residing in residential communities, homes, and group homes on the same basis and conditions as any other citizen. Nothing herein shall be construed to conflict with provisions of Chapter 122 of the General Statutes. (1975, c. 635.)

The definition of "visually handicapped" persons found in G.S. 111-11 and incorporated by reference in G.S. 168-1 is as follows:

§ 111-11. Definition of visually handicapped person. —For purpose of this Chapter [Ch. 111, Aid to the Blind], visually handicapped persons are those persons who are totally blind or whose vision with glasses is so defective as to prevent the performance of ordinary activity for which eyesight is essential. (1935, c. 53, s. 10; 1939 c. 124; 1971, c. 1215, s. 3.)

Chapter 168 has three sections which employ the term "visually handicapped":

§ 168-4. May be accompanied by guide dog. —Every visually handicapped person shall have the right to be accompanied by a guide dog, especially trained for the purpose, in any of the places listed in G.S. 168-3 provided that he shall be liable for any damage done to the premises or facilities by such dog. (1973, c. 493, s. 1.)

§ 168-5. Traffic and other rights of persons using certain canes. —The driver of a vehicle approaching a visually handicapped pedestrian who is carrying a cane predominately white or silver in color (with or without a red tip) or using a guide dog shall take all necessary precautions to avoid injury to such pedestrian. (1973, c. 493, s. 1.)

§ 168-7. Guide dogs. —Every visually handicapped person who has a guide dog, or who obtains a guide dog, shall be entitled to keep the guide dog on the premises leased, rented or used by such handicapped person. He shall not be required to pay extra compensation for such guide dog but shall be liable for any damage done to the premises by such a guide dog. (1973, c. 493, s. 1.)

[1, 2]    Defendant has vigorously argued that as the term "visual-ly handicapped" is used in Chapter 168, and its definition from Chapter 111 is incorporated by reference, the only classes of persons with "visual disability" included in Chapter 168's protective umbra would be the "visually handicapped"—those persons who are either totally or functionally blind. Plaintiff, however, contends that the term "visual disability" as used in G.S. 168-1 includes as its most serious gradation the "visually handicapped" as defined in G.S. 111-11, but also includes persons with visual impairments less serious than those encompassed by the term "visually handicapped." We note that this is a remedial statute, and should be construed broadly rather than narrowly to achieve its purposes. *See*, Sutherland's Statutes and Statutory Construction, Vol. 3, pp. 29, 32. *Accord, Wilmington Shipyard v. North Carolina State Highway Commission*, 6 N.C. App. 649, 171 S.E. 2d 222 (1970). In view of this recognized principal of statutory construction, we decline to accept the defendant's narrowly restrictive reading of G.S. 168-1, and conclude that the trial judge's order dismissing the complaint must be reversed. To do otherwise would be to render meaningless the protection of G.S. Chapter 168 to a number of persons who have serious visual disabilities but are nonetheless not so severely impaired as provided for in Chapter 111 and specifically G.S. 111-11.

It seems clear to us that the Legislature intended to grant broad protection of basic rights to all persons with any type of disability, and additionally sought to grant particular protection to an especially disabled group (the "visually handicapped") by three sections dealing with that group (as defined in G.S. 111-11): G.S. 168-4, 5 and 7. "A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." *State v. Hart*, 287 N.C. 76, 80, 213 S.E. 2d 291, 295 (1975). A contrary holding would, it appears to us, operate to defeat the objectives of this remedial chapter and would be contrary to the language employed and intent manifested by the Legislature.

The United States Department of Health, Education and Welfare, in its regulations issued pursuant to the Rehabilitation Act of 1973 (29 USC § 706) defined "handicapped person" as ". . . any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a

record of such an impairment, or (iii) *is regarded as having such an impairment*." (Emphasis supplied.) Taking as true the allegations of the plaintiff, as we are required to do on a motion to dismiss a complaint for failure to state a claim, it is apparent that the defendant viewed the plaintiff as being under some type of disability, and that the defendant denied employment to plaintiff for this reason without any consideration of whether the disability would materially impair plaintiff's job performance. It is this type of alleged discrimination against which the General Assembly intended the protection of Chapter 168. Otherwise, many persons suffering from chronic diseases or disabilities could be arbitrarily denied employment opportunities even though their disabilities would not have any effect on their job performance.

Accordingly, we hold that the plaintiff's complaint sufficiently stated a cause of action to enforce rights accruing by virtue of G.S. Chapter 168 and the North Carolina Constitution. The order of the trial court dismissing the plaintiff's complaint is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.

Judges VAUGHN and ARNOLD concur.