RAYMOND BURGESS, ON BEHALF OF HIMSELF AND ALL OTHER PERSONS SIMILARLY SITUATED v. JOSEPH SCHLITZ BREWING COMPANY

No. 21

(Filed 6 November 1979)

1. Master and Servant § 1— visually disabled—right of employment

The General Assembly did not intend the narrow definition of "visually handicapped" in G.S. 111-11, which refers only to persons who are blind or functionally blind, to control the meaning of the term "visual disabilities" in the statute defining "handicapped persons," G.S. 168-1; rather, the General Assembly intended that the definition in G.S. 111-11 would apply only when the specific term "visually handicapped" was used.

**2. Master and Servant § 1— visual disability—simple glaucoma—20/20 vision—handicapped person—right of employment**

> A person who suffers from simple glaucoma but has 20/20 vision in both eyes with glasses does not have a "visual disability" within the meaning of G.S. 168-1 and is thus not a "handicapped person" who is granted a right of employment by G.S. 168-6.

> Justice BROCK did not participate in the consideration or decision of this case.

ON petition for discretionary review of the decision of the Court of Appeals, 39 N.C. App. 481, 250 S.E. 2d 687 (1979), reversing judgment of *McConnell, J.,* entered 7 February 1978, FORSYTH Superior Court.

This is a class action in which plaintiff asserts that defendant's acts, policies, practices and procedures violated the rights of plaintiff and the class he represents as secured by G.S. 168-6, which grants to "handicapped persons" the right to employment.

Plaintiff alleges, in pertinent part, that on 16 February 1975, he applied for employment with defendant. On 18 February 1976, defendant informed plaintiff that it wanted him to go to work and requested him to report for a pre-employment physical examination. On 20 February 1976, defendant informed plaintiff that he would not be hired because the physical examination indicated that plaintiff had a case of simple glaucoma. Plaintiff was told that it was against defendant's policy to hire individuals who had glaucoma. Defendant was informed by competent medical authority that plaintiff's glaucoma would in no way interfere with plaintiff's job performance and that in fact plaintiff had 20/20 vision in both eyes with glasses.

Defendant filed a motion to dismiss under Rule 12(b)(6), Rules of Civil Procedure, for failure to state a cause of action upon which relief could be granted. In support of its motion, defendant contended that plaintiff's complaint affirmatively established that plaintiff was not a "handicapped person" as that term was defined in G.S. 168-1. Defendant's motion was granted by the trial court.

On plaintiff's appeal the Court of Appeals reversed. Defendant's petition for discretionary review was allowed by this Court.

*Pfefferkorn & Cooley, P.A., by William G. Pfefferkorn; J. Wilson Parker and Jim D. Cooley, attorneys for plaintiff appellee.*

*Womble, Carlyle, Sandridge & Rice, by Charles F. Vance, Jr. and W. Andrew Copenhaver, attorneys for defendant appellant.*

HUSKINS, Justice.

In Chapter 168 of the General Statutes the General Assembly has granted a number of rights to "handicapped persons." Among these rights is the right to employment. This right is granted by G.S. 168-6, which provides, in pertinent part, that *"handicapped persons* shall be employed . . . on the same terms and conditions as the ablebodied, unless it is shown that the particular disability impairs the performance of the work involved." (Emphasis added.)

Plaintiff alleges that defendant violated G.S. 168-6 by refusing to hire him upon discovering that plaintiff suffered from a case of simple glaucoma which did not interfere with plaintiff's job performance. Defendant had been "informed by competent medical authority" that plaintiff's glaucoma "would in no way interfere with plaintiff's job performance and that in fact plaintiff had 20/20 vision in both eyes with glasses." Nonetheless, plaintiff was told by defendant that it was against company policy to hire an indiviudal afflicted with glaucoma.

In order to state a cause of action for violation of the right to employment granted in G.S. 168-6, plaintiff must establish that he is a "handicapped person" to whom such rights are granted. The central issue in this appeal is whether a person who suffers from "simple glaucoma," but has 20/20 vision in both eyes with glasses, is a "handicapped person" as defined in Chapter 168.

Resolution of this issue requires consideration of G.S. 168-1, which states the purpose of Chapter 168 and defines the term "handicapped person":

> "The State shall encourage and enable handicapped persons to participate fully in the social and economic life of the State and to engage in remunerative employment. The definition of 'handicapped persons' shall include those individuals with physical, mental and visual disabilities. For the purposes

of this Article the definition of 'visually handicapped' in G.S. 111-11 shall apply."

The definition of "visually handicapped" in G.S. 111-11 referred to in G.S. 168-1 reads as follows:

"[V]isually handicapped persons are those persons who are totally blind or whose vision with glasses is so defective as to prevent the performance of ordinary activity for which eyesight is essential."

From the above summary it is evident that "the definition of 'handicapped person' *shall include* those indivudals with . . . *visual disabilities*." G.S. 168-1. (Emphasis added.) However, G.S. 168-1 further provides that "for the purposes of [Article 1 in Chapter 168] the definition of 'visually handicapped' in G.S. 111-11 shall apply."

Defendant contends that the definition of "visually handicapped" in G.S. 111-11 limits the meaning of "visual disabilities" in G.S. 168-1. According to defendant, the only form of "visual disability" covered by G.S. 168-1 is blindness or functional blindness as defined in G.S. 111-11. Defendant points to plaintiff's allegation that he has "20/20 vision in both eyes with glasses" and concludes that plaintiff is not a "handicapped person" within the meaning of G.S. 168-1.

Plaintiff contends that the sole purpose of the reference to G.S. 111-11 is to indicate that whenever the specific phrase "visually handicapped" is used in the statute, then the definition given in G.S. 111-11 shall apply. Whenever that specific phrase is not used, then the broader term "visual disabilities," unrestricted by reference to G.S. 111-11, shall apply to define a "handicapped person."

Literally read, the statement in G.S. 168-1 making the definition of "visually handicapped" in G.S. 111-11 applicable "[f]or the purposes of this Article" can be interpreted in either the manner suggested by plaintiff or defendant. To resolve this ambiguity, we must therefore construe the statutory language in question in light of the applicable canons of statutory construction.

. The intent of the legislature controls the interpretation of a statute. *Realty Co. v. Trust Co.*, 296 N.C. 366, 250 S.E. 2d 271

(1979); *Mazda Motors v. Southwestern Motors,* 296 N.C. 357, 250 S.E. 2d 250 (1979). "A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." *State v. Hart,* 287 N.C. 76, 213 S.E. 2d 291 (1975). To this end, the words and phrases of a statute must be interpreted contextually, in a manner which harmonizes with the other provisions of the statute and which gives effect to the reason and purpose of the statute. *In re Hardy,* 294 N.C. 90, 240 S.E. 2d 367 (1978); *Underwood v. Howland, Commr. of Motor Vehicles,* 274 N.C. 473, 164 S.E. 2d 2 (1968). Finally, this statute, being remedial, should be construed liberally, in a manner which assures fulfillment of the beneficial goals for which it is enacted and which brings within it all cases fairly falling within its intended scope. *Hicks v. Albertson,* 284 N.C. 236, 200 S.E. 2d 40 (1973); *Weston v. Lumber Co.,* 160 N.C. 263, 75 S.E. 800 (1912).

Application of the above principles leads us to conclude that the restrictive definition of "visually handicapped" in G.S. 111-11 should not be applied in a manner which limits the meaning of "visual disability" in G.S. 168-1. Significantly, the opening sentence in G.S. 168-1 announces in the broadest possible terms the legislative purpose in granting certain rights to the handicapped: "The State shall encourage and enable *handicapped persons* to participate fully in the social and economic life of the State and to engage in remunerative employment." (Emphasis added.) In the same vein, the second sentence indicates that the term *handicapped person* is to be defined expansively: "The definition of 'handicapped person' *shall include* those individuals with physical, mental and *visual disabilities.*" (Emphasis added.) Moreover, when we focus attention on those sections of the statute which enumerate the various rights of the handicapped, it becomes apparent that the narrowly defined term "visually handicapped," which refers only to persons who are blind or functionally blind, *see* G.S. 111-11, is used *solely* in connection with those sections of the statute dealing exclusively with problems unique to the type of handicap identified by that term.

"§ 168-4. May be accompanied by guide dog. — Every *visually handicapped* person shall have the right to be accompanied by a guide dog, especially trained for the purpose, in any of the places listed in G.S. 168-3 provided that he shall

be liable for any damage done to the premises or facilities by such dog.

§ 168-5. Traffic and other rights of persons using certain canes.—The driver of a vehicle approaching a *visually handicapped* pedestrian who is carrying a cane predominantly white or silver in color (with or without a red tip) or using a guide dog shall take all necessary precautions to avoid injury to such pedestrian.

* * * *

§ 168-7. Guide dogs.—Every *visually handicapped* person who has a guide dog, or who obtains a guide dog, shall be entitled to keep the guide dog on the premises leased, rented or used by such handicapped person. He shall not be required to pay extra compensation for such guide dog but shall be liable for any damage done to the premises by such a guide dog. No person, firm or corporation shall refuse to sell, rent, lease or otherwise disallow a *visually handicapped* person to use any premises for the reason that said *visually handicapped* person has or will obtain a guide dog for mobility purposes." (1977 Cum. Supp.) (Emphasis added.)

On the other hand, those sections of the statute which address problems common to all handicapped citizens utilize the broadly defined term "handicapped person," which encompasses all persons "with physical, mental and visual disabilities":

"§ 168.2. Right of access to and use of public places.—*Handicapped persons* have the same right as the ablebodied to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and all other buildings and facilities, both publicly and privately owned, which serve the public.

§ 168.3. Right to use of public conveyances, accommodations, etc.—The *handicapped* and *physically disabled* are entitled to accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motor buses, streetcars, boats, or any other public conveyances or modes or transportation; hotels, lodging places, places of public accommodation, amusement or resort to which the general public is invited, subject only to

the conditions and limitations established by law and applicable alike to all persons.

\*   \*   \*   \*

§ 168.6. Right to employment.—*Handicapped persons* shall be employed in the State service, the service of the political subdivisions of the State, in the public schools, and in all other employment, both public and private, on the same terms and conditions as the ablebodied, unless it is shown that the particular disability impairs the performance of the work involved.

\*   \*   \*   \*

§ 168.8. Right to habilitation and rehabilitation services.—*Handicapped persons* shall be entitled to such habilitation and rehabilitation services as available and needed for the development or restoration of their capabilities to the fullest extent possible. Such services shall include, but not be limited to, education, training, treatment and other services to provide for adequate food, clothing, housing and transportation during the course of education, training and treatment. *Handicapped persons* shall be entitled to these rights subject only to the conditions and limitations established by law and applicable alike to all persons.

§ 168.9. Right to housing.—Each *handicapped citizen* shall have the same right as any other citizen to live and reside in residential communities, homes, and group homes, and no person or group of persons, including governmental bodies or political subdivisions of the State, shall be permitted, or have the authority, to prevent any handicapped citizen, on the basis of his or her handicap, from living and residing in residential communities, homes, and group homes on the same basis and conditions as any other citizen. Nothing herein shall be construed to conflict with provisions of Chapter 122 of the General Statutes.

§ 168.10. Eliminate discrimination in treatment of handicapped and disabled.—Each *handicapped person* shall have the same consideration as any other person for individual accident and health insurance coverage, and no insurer, solely on the basis of such person's handicap, shall deny such

coverage or benefits. The availability of such insurance shall not be denied solely due to the handicap, provided, however, that no such insurer shall be prohibited from excluding by waiver or otherwise, any pre-existing conditions from such coverage, and further provided that any such insurer may charge the appropriate premiums or fees for the risk insured on the same basis and conditions as insurance issued to other persons. Nothing contained herein or in any other statute shall restrict or preclude any insurer governed by Chapter 57 or Chapter 58 of the General Statutes from setting and charging a premium or fee based upon the class or classes of risks on sound actuarial and underwriting principles as determined by such insurer, or from applying its regular underwriting standards applicable to all classes of risks. The provisions of this section shall apply to both corporations governed by Chapter 57 and Chapter 58 of the General Statutes." (1977 Cum. Supp.) (Emphasis added.)

[1] Thus, when we read the statute contextually, it is clear that the General Assembly did not intend the narrow definition of "visually handicapped" in G.S. 111-11 to control the meaning of the term "visual disabilities" in G.S. 168-1; rather, the General Assembly intended that the definition in G.S. 111-11 would apply only when the specific term "visually handicapped" was used.

Such a reading of the statute harmonizes the definition of "visually handicapped" in G.S. 111-11 with the remaining provisions of the statute and gives full effect to the reason and purpose of the statute. *See In re Hardy, supra.* The broadly expressed goal of this statute is "to encourage and enable handicapped persons to participate fully in the social and economic life of the State and to engage in remunerative employment." G.S. 168-1. Given such a broad expression of legislative intent, exclusion from coverage of persons suffering from "visual disabilities" less severe than blindness would be contrary to the spirit of the statute. Such exclusion would fail to bring under the statute all cases falling within its intended scope. *See Hicks v. Albertson, supra.*

[2] We must now determine whether plaintiff has "visual disabilities" within the meaning of the statute.

As used in this statute, the term "disability" refers to a present, non-correctible loss of function which substantially impairs a person's ability to function normally. Plaintiff alleges that he suffers from a case of simple glaucoma. However, he further alleges that he has 20/20 vision in both eyes with glasses. Essentially, plaintiff has indicated in his pleadings that he has an eye disease but that his vision is functioning normally with glasses. Accordingly, we must conclude that plaintiff is not visually disabled within the meaning of the statute.

Plaintiff asks us to extend the coverage of the statute to those who suffer from *potentially* disabling conditions, irrespective of whether those conditions have in fact resulted in "physical, mental, or visual disabilities." G.S. 168-1. Such an interpretation, if adopted, would exceed the intended scope of this statute. Fairly construed, the remedial provisions of this statute are intended to aid only those who are presently disabled. The problems of individuals, not presently disabled, who suffer from conditions which may or may not disable them in the future are beyond the scope of the statute. Such individuals are not "handicapped persons" within the meaning of the statute as presently written.

Plaintiff does not allege sufficient facts to establish himself as a "handicapped person" within the meaning of G.S. 168-1. His complaint, therefore, fails to state a claim under G.S. 168-6 upon which relief can be granted. Accordingly, defendant's motion to dismiss under Rule 12(b)(6), Rules of Civil Procedure, was properly granted by the trial court.

For the reasons stated, the judgment of the trial court must be reinstated. To that end, the decision of the Court of Appeals is

Reversed.

Justice BROCK did not participate in the consideration or decision of this case.