STATE of Wyoming, Appellant
(Defendant),

v.

Ann STOVALL and Jodi Jude,
Appellees (Plaintiffs).

No. 5654.

Supreme Court of Wyoming.

July 20, 1982.

A. Joseph Williams of Guy, Williams, White & Argeris, Cheyenne, for appellant.

Keith G. Kautz of Sawyer & Warren, Torrington, for appellees.

David Tewell of Tewell, Thorpe & Findlay, Inc., P. C., Seattle, Wash., and Edwin H. Whitehead of Urbigkit & Whitehead, P. C., Cheyenne, signed the amicus curiae brief on behalf of Savage Brothers, Inc., in support of appellees.

John E. Stanfield, Laramie, signed the amicus curiae brief on behalf of the Wyoming Trial Lawyers Association, in support of appellees.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

Appellees Stovall and Jude were injured when a car which Stovall was driving went off the highway. They filed suit for damages against appellant State Highway Department (Department) under the Wyoming Governmental Claims Act, § 1–39–101, et seq., W.S.1977, Cum.Supp.1981, alleging that the Department had negligently maintained the highway and that the Department's negligence proximately caused their injuries. The Department stipulated negligence and damages; however, it asserted the defense of sovereign immunity, contending that "public facilities" in § 1–39–111, supra, did not include highways. Based on the Department's admitted negligence and stipulated damages, the court awarded judgment for appellees.

We affirm.

Section 1–39–111, supra, reads:

"A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of public facilities * * *."

The single issue for review is whether the words "public facilities" in § 1–39–111, supra, as amended, include highways.

Before resorting to rules of statutory construction, courts first try to assume that words of a statute have their plain, ordinary and usual meaning in the absence of clear statutory provisions to the contrary. *Board of County Commissioners of County of Campbell v. Ridenour*, Wyo., 623 P.2d 1174 (1981). Counsel for the respective parties have found no case in which the court's ultimate holding was based upon its having construed the words "public facilities" either to include or not to include highways, nor has our independent research discovered any such case. However, from a survey of the cases, it appears that there is an assumption that a public highway is a public facility.

The cases which either directly state that a highway is a facility or imply that a highway is a facility are more prevalent than those which set out a highway and a public facility as two different things. "[A]

highway * * * is a facility, existing and maintained for the convenient use of the public." *State Commissioner of Transportation v. Township of South Hackensack*, 65 N.J. 377, 322 A.2d 818, 821 (1974). Another case says that when a state provides a public facility, it has the right to regulate traffic on it. The facility referred to is a highway. *State v. Smolen*, 4 Conn.Cir. 385, 232 A.2d 339 (1967), cert. denied 389 U.S. 1044, 89 S.Ct. 787, 19 L.Ed.2d 835 (1968). Another case speaks of highways and "other necessary public facilities." *La Salle National Bank v. County of Lake*, 27 Ill.App.3d 10, 325 N.E.2d 105, 114 (1975). Yet another speaks of an action brought against a private contractor for damage to real property during the construction of a public facility, a highway. *Sayre v. Stevens Excavating Company*, W.Va., 256 S.E.2d 571 (1979). Another speaks of "integral parts of the public facility for which the property was condemned," referring to a highway. *Missouri Pacific Railroad Co. v. State*, Tex.Civ. App., 469 S.W.2d 817, 820 (1971).

Other cases, which quote from statutes, use highways and public facilities in a list of words, implying that they are different. One case speaks of "highways, public facilities, flood control projects, and urban renewal activities." *State ex rel. West Virginia Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545, 551 (1969). Another case speaks of the handicapped having access to the "free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and all other buildings and facilities." *Burgess v. Joseph Schlitz Brewing Company*, 39 N.C. App. 481, 250 S.E.2d 687, 688 (1979), reversed on other issues, 298 N.C. 520, 259 S.E.2d 248 (1979).

We have found no case, however, which says that a public highway is not a public facility. The plain, ordinary, and usual meaning of a facility is that it is something which "promotes the ease of any action, operation, transaction, or course of conduct." Black's Law Dictionary, 531 (5th ed. 1979); and Webster's Third New International Dictionary, Unabridged, p. 812 (G. & C. Merriam Co. 1971). The purpose of a highway is to promote the ease of travel. In the ordinary sense of the word, it is a facility. However, buildings, recreational areas, parks, hospitals and airports are also facilities in the ordinary sense of the word. The legislature set out separate statutes establishing governmental liability for negligence occurring in these facilities, which it arguably did not need to do if it intended the term facility to be used in its ordinary and broadest sense. Therefore, "facilities" here is susceptible of more than one meaning and an ambiguity exists. When an ambiguity exists, courts then resort to rules of statutory construction. *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of County of Albany*, Wyo., 592 P.2d 1154 (1979).

Statutory construction is a fertile source of litigation for parties and a fertile source of frustration for courts. Here, the legislature was successful in obscuring its intent regarding highways and "public facilities," if indeed it had any. Although courts resort to numerous rules of statutory construction to determine legislative intent, they are often reduced to drawing what they hope is a logical inference about the legislature's intent, knowing that if their inference is wrong, the legislature will eventually correct it. We are in that position here. We will discuss some of the accepted rules of statutory construction because they offer us help. They are, nevertheless, not determinative; we are left to make what we think is a logical inference of the legislative intent.

■ The fundamental rule in statutory construction is to ascertain, if possible, what the legislature intended by the language used, viewed in light of the objects and purposes to be accomplished. School Districts Nos. 2, 3, 6, 9, and 10, in *County of Campbell v. Cook*, Wyo., 424 P.2d 751 (1967). Where the policy is stated in a preamble to an act, that statement of policy may be considered. *Sanchez v. State*, Wyo., 567 P.2d 270 (1977). The statement of purpose for the Wyoming Governmental Claims Act says:

"The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity and is cognizant of the Wyoming supreme court decision of *Oroz v. Board of County Commissioners*, 575 P.2d 1155 (1978). * * This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers. * * * " Section 1–39–102(a), W.S.1977, Cum.Supp.1981.

In *Oroz v. Board of County Commissioners of County of Carbon*, Wyo., 575 P.2d 1155 (1978), this court abolished the doctrine of municipal immunity, saying that it was an unfair doctrine. The Department's argument and conclusion that the legislature did not intend that the term "public facilities" include highways is not illogical, just as appellees' contrary conclusion is not illogical. When we are confronted with two possible but conflicting conclusions, we will choose the one that is most logically designed to cure the mischief or inequity that the legislature was attempting to accomplish. In ascertaining legislative intent, courts must look to, among other things, the mischief a statute was intended to cure, the historical setting surrounding its enactment, and the public policy of the state. *Saffels v. Bennett*, Wyo., 630 P.2d 505 (1981). Here, the legislature was trying to correct the inequity of the doctrine of governmental immunity. It acknowledged the unfairness of strict application of governmental immunity and cited *Oroz v. Board of County Commissioners of County of Carbon*, supra, a case dealing with negligent maintenance of highways. Under the Department's theory, the Oroz decision would be nullified. If the legislature had intended to do that, we think it would not have taken cognizance of that decision one breath after it acknowledged the unfairness of the immunity doctrine.

■ Another rule of statutory construction is that courts may try to determine

legislative intent by looking at the legislative history of a statute. *Padilla v. State*, Wyo., 601 P.2d 189 (1979). Unfortunately, because of the sparse legislative history kept in this state, peering into the past, even the very recent past, becomes as difficult as predicting the future. What legislative history we do have is as follows:

Section 1–39–111 of House Bill 122, when introduced, read:

"*1–39–111. Liability; highways and streets.* Notwithstanding W.S. 1–39–104(a) a governmental entity is liability [sic] for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of *public bridges, culverts, highways, roadways, streets, alleys, sidewalks or parking areas.*" (Emphasis added.)

The bill was referred to the House Judiciary Committee, which deleted House Bill 122 and substituted House Bill 122A. Section 1–39–111 of House Bill 122A read:

"*1–39–111. Liability; highways and streets.* Subject to W.S. 1–39–113 and 1–39–114 a governmental entity is liable for damages resulting from tortious conduct of public employees while acting within the scope of their duties in the operation or maintenance of *public facilities* within the jurisdiction of the employing governmental entity." (Emphasis added.)

House Bill 122A was adopted by the House and sent to the Senate, which amended it so that § 1–39–111 read:

"*1–39–111. Liability; highways and streets.* A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of *public facilities* within the jurisdiction of the employing governmental entity." (Emphasis added.)

The House refused to concur in the amendments and House Bill 122A was sent to a joint conference committee, which rec-

ommended the adoption of the Senate amendments. Additionally, the conference committee deleted from the title of § 1–39–111 the words "highways and streets" and substituted the words "public facilities."

The Department argues that the deletion of the word "highways" and the substitution of the words "public facilities" shows that the legislature did not intend to impose liability for negligently maintained highways. Appellees argue that the change in the wording involved replacing specific words with broader, more inclusive language. We think this argument makes more sense. If we were to assume that the legislature wanted to eliminate "highways" when it substituted the term "public facilities," then we would also have to assume that the legislature intended to eliminate public bridges, culverts, roadways, streets, alleys, sidewalks or parking areas. If we make that assumption, we are left to conjecture just what the legislature meant to include, an activity which courts wisely try to avoid.

The Department conjectures in its brief that the legislature meant "public facilities" to include "public amusement areas, public exhibitions, public housing, public buildings, public places of entertainment, places of business, places of public resort." However, public amusement areas, public housing, public places of entertainment, public places of exhibition, and places of public resort all appear to be covered under § 1–39–106, supra:

"A governmental entity is liable for damages * * * caused by the negligence of public employees * * * in the operation or maintenance of any building, recreation area or public park."

Of all the things the Department suggests the legislature intended to cover by the term "facilities," the only one which does not already appear to be covered by another statute is "places of business," which as a matter of common sense would be conducted in a public building, an area covered in § 1–39–106, supra. Every word in legislation is presumed to have a meaning, and a statute should be construed so that no part will be inoperative or superfluous.[1] The definition of "public facilities" should not include anything which is already covered in another statute in the same Act. If "public facilities" is only to mean what is already covered in § 1–39–106, supra, we are left with a meaningless statute. If we were to accept the Department's argument, we would construe § 1–39–111, supra, out of existence. The legislature will not be presumed to intend futile things. *State Board of Equalization v. Cheyenne Newspapers, Inc.,* Wyo., 611 P.2d 805 (1980). *Yeik v. Department of Revenue and Taxation,* Wyo., 595 P.2d 965 (1979).

Another rule of statutory construction is that courts may try to determine legislative intent by considering the type of statute being interpreted. The Department argues that this statute is in derogation of common law. A statute designed

1. This presumption that legislatures intend every word to have meaning gives more credit to legislators than to the rest of the population. Courts, unlike legislatures, are not presumed to give meaning to every word.

Edwin Newman in his book *A Civil Tongue* says that Americans are extravagant in their use of words, using two when one will do. He cites the examples of Henry Kissinger discussing a "hypothetical situation that does not now exist." He also cites a Pentagon spokesman who gives out a "preliminary final count," presumably because (Kissinger again) it is too early to draw a "final conclusion." The *New York Times* uses the term "loud yelling," which Newman says may be done individually or, as at college athletic contests, in "mass unison."

Newman says there are two causes for our waste. One is the feeling that an idea is more effective if it is repeated. "This is why Jimmy Carter says that he had a deeply profound religious experience. At any rate, I want to believe that that is why. I would hate to learn that he thought that deep and profound are different." The second cause of waste, according to Newman, is a failure to understand what words mean. "The *New York Times* could not run a headline about an unexpected surprise from Japan if it knew what surprise meant." Edwin Newman, "A Fatal Slaying of the Very Worst Kind" from *A Civil Tongue* (Warner Books Edition, 1976.)

"Double talk" is an American expression. It is talk that sounds impressive, but means nothing.

to change the common law must be strictly construed. *Mahaney v. Hunter Enterprises, Inc.*, Wyo., 426 P.2d 442 (1967). It must speak in clear and unequivocal terms, for the presumption is that no change is intended unless the statute is explicit.

This statute, however, is not entirely in derogation of the common law. At the time it was passed, two separate areas of common law existed in Wyoming, one concerning municipal immunity, meaning governmental bodies other than the state; the other concerning sovereign immunity, meaning state governmental bodies. We said in *Worthington v. State*, Wyo., 598 P.2d 796 (1979), that governmental subdivisions included in municipal corporations, school districts, cities, or any other subdivisions of government possess none of the attributes of a sovereign being, as they are creatures of the delegated authority which flows from the state.

Sovereign immunity pertains to a suit against the state wherein a state officer or agency is or will be required to use state property or funds to afford the relief demanded, or which seeks to compel officers or agents to do something which will impose contractual liability on the state. *Retail Clerks Local 187 AFL–CIO v. University of Wyoming*, Wyo., 531 P.2d 884 (1975). The Wyoming Governmental Claims Act, § 1–39–101, et seq., supra, speaks to governmental immunity, which in context includes both sovereign and municipal immunity.[2] If we accept appellant's argument, we would use a rule of statutory construction to reach an impossible conclusion: Under the common law in Wyoming at the time this Act was passed, municipal immu-

nity for the negligent maintenance and operation of highways had been abolished by the *Oroz* decision. Because § 1–39–101, et seq., supra, did not explicitly change the common law in this regard, there would still be no municipal immunity for the negligent maintenance and operation of highways, according to a strict construction.

On the other hand, under the common law in Wyoming at the time this Act was passed, sovereign immunity for negligence, including negligent maintenance and operation of highways, did exist. If we construed § 1–39–111, supra, strictly by saying that the precise word "highways" had to be used, we would then have interpreted § 1–39–111, supra, to say that there is governmental immunity from liability for the negligent maintenance and operation of highways, which includes sovereign and municipal liability, but that there is no municipal immunity from liability for the same thing, an impossible state of affairs. If this statute were strictly construed, it would have an absurd result, and statutes will not be construed so as to have an absurd result. Instead, the presumption is that the legislature aimed to enact reasonable and logical legislation. *Department of Revenue and Taxation v. Irvine*, Wyo., 589 P.2d 1295 (1979).

Also, this Act does speak in clear and unequivocal terms. It is explicit in setting up exceptions to immunity. Unquestionably, immunity is no longer going to be absolute; in that sense the Act is precise. The legislature obviously intended to exempt the negligent operation and maintenance of public facilities from immunity; unfortunately, it failed to define the term.[3]

---

**2.** We are aware that other courts have used the term governmental immunity to mean municipal immunity. See *Mackin v. State*, Mont., 621 P.2d 477 (1980), and *Clark v. Scheld*, 253 N.C. 732, 117 S.E.2d 838 (1961). It is clear from the context of § 1–39–101, et seq., supra, that the legislature intended governmental immunity to include both municipal and sovereign immunity. In the statutory sections setting out exceptions to immunity, §§ 1–39–104 through 1–39–112, supra, the legislature said that governmental entities are liable for damages in certain instances. Section 1–39–103(a)(i) defines gov-

ernmental entity as the State, University of Wyoming, or any local government. Section 1–39–103(a)(ii) defines local government as including cities, towns, counties and all political subdivisions of the State, among other things.

**3.** Some state legislatures have provided for "close-ended" claims acts, which means that the legislatures first reasserted immunity and then imposed liability in specific areas. Thus, immunity remains the rule and waiver of immunity the exception. Other state legislatures have enacted "open-ended" claims acts, which means that liability is first asserted generally

Courts may look to extraneous matters to try to determine legislative intent. *Saffels v. Bennett*, supra. Although special legislation dealing with the same matter is not determinative of legislative intent on general legislation, it may be considered by the courts, and in this case we think it should not be ignored.[4] Subsequent developments in the case of *Worthington v. State*, supra, support the contention that the legislature intended to include highways in the term "public facilities." In that case, dated July 18, 1979, we declined to abolish sovereign immunity for an injury which occurred in 1976, saying that sovereign immunity was not court-made law and that the legislature would have had to abolish it. The Wyoming Governmental Claims Act was effective July 1, 1979, eighteen days before this court handed down the decision in *Worthington v. State*, supra. In that case we referred to the recently passed Wyoming Governmental Claims Act but inferred that in any event it would not be applicable to Ms. Worthington's case because its effective date was after Ms. Worthington's injury. Later, the legislature adopted Chapter 61, S.L. of Wyo.1981, allowing Ms. Worthington to pursue her claim against the State, which claim arose from the assertion of negligent maintenance and operation of a highway. In other words, (1) this court abolished the doctrine of municipal immunity because it was unfair court-made law, and did so in a case having to do with negligent municipal maintenance of a highway (*Oroz*); (2) this court refused to abolish the doctrine of sovereign immunity for an injury occurring before passage of the Wyoming Governmental Claims Act, saying that the legislature had to abolish the doctrine; (3) the legislature had passed an act abrogating some governmental immunity for tort, which became effective after the injury in *Worthington v. State*, supra, occurred. If the special bill was just an act of grace by the legislature, then we are presented with an anomalous position.

As we have already said, if we assume that the legislature meant to keep sovereign immunity for negligent maintenance and operation of highways, we assume that it implicitly negated *Oroz v. Board of County Commissioners of County of Carbon*, supra, because the Act speaks to governmental immunity, a term which in this Act means both municipal and sovereign immunity. Then we must assume that after implicitly negating *Oroz v. Board of County Commissioners of County of Carbon*, supra, the legislature turned right around and granted a cause of action to Ms. Worthington based on negligent sovereign operation and maintenance of a highway. It seems more logical to assume that the legislature intended to act consistently, first acknowledging the unfairness of the immunity doctrine and then allowing Ms. Worthington to prosecute her cause of action for the reason that anyone else can now prosecute a similar cause of action.

■ For all these reasons, we think the legislature intended to include public highways in the term "public facilities."

Affirmed.

and then specific areas of immunity are designated.

Section 1–39–104(a) of the Wyoming Governmental Claims Act says that a governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by §§ 1–39–105 through 1–39–112, supra. The Department asserted that the distinction between "close-ended" and "open-ended" acts may be significant in determining legislative intent, which is probably correct. In this instance, though, the legislature did precisely set out an exception.

4. Other courts have used the same procedure. In *River Development Corp. v. Liberty Corporation*, 51 N.J.Super. 447, 144 A.2d 180 (1958), the court held that a special act and a previous general act were in pari materia, so that a special act would be interpreted as granting to one person what the general act had granted to others. In *United States v. Board of School Commissioners of City of Indianapolis, Indiana*, 637 F.2d 1101 (7th Cir. 1980), cert. denied 449 U.S. 838, 101 S.Ct. 115, 66 L.Ed.2d 45 (1980), the Indiana legislature passed special legislation repealing a portion of an old law 16 days before final passage of a new law which was related to the old law. The court assumed that the special bill was passed in direct response to the general legislation, and that the special legislation showed that the general legislation had a discriminatory intent.

ROONEY, Justice, specially concurring.

I concur with the result reached by the majority opinion but express the following in hopes that the legislature will act to more clearly express its intent relative to this very important enactment. I agree with the majority opinion that such enactment is ambiguous and that we must, therefore, attempt to ascertain the legislative intention.

I do not agree that such intention can be gathered from the reference to *Oroz v. Board of County Commissioners of County of Carbon*, Wyo., 575 P.2d 1155 (1978) in the purpose clause of the Act, § 1–39–102, W.S. 1977, Cum.Supp.1981. That reference and the notation in the clause to the trustee nature of public revenues could well indicate an intention to restrict the result of *Oroz* to a more historical "application of the doctrine of governmental immunity" than judicially established in *Oroz* while recognizing the propriety of some relaxation, because of "the inherently unfair and inequitable results which occur in the *strict* application of" it (emphasis added). It cannot be said, one way or the other, that the legislative cognizance of *Oroz* reflected an intention to confirm its holding or an intention to restrict its application. It can be assumed that the legislature considered the comment of the Attorney General:[1]

> "* * * Even though *Oroz* has abrogated sovereign immunity for counties, cities, and lesser political subdivisions, the legislature can enact such laws as to nullify this decision."

Nor do I find the fact that the legislature passed a private bill on behalf of Mrs. Worthington, subsequent to the opinion in *Worthington v. State*, Wyo., 598 P.2d 796 (1979), to be of consequence. Private bills have long been a means of waiving governmental or sovereign immunity as the legislature deemed proper. Its use in this instance cannot reflect legislative intent, insofar as the Wyoming Governmental Claims Act is concerned, one way or the other. It could be said that this private bill indicated legislative intent to maintain its control over waiver of immunity with reference to claims based on negligent maintenance of highways.[2]

I do find an indication of legislative intent in the history of the enactment—but with different emphasis than that placed thereon by the majority opinion. The majority opinion accurately points out the redundancy resulting from the use of the general words "public facilities" in § 1–39–111, W.S.1977, Cum.Supp.1981. Certainly, the specific words "building, recreation area or public park" in § 1–39–106, W.S.1977, Cum.Supp.1981, are unnecessary since they are obviously included within the term "public facilities." Likewise, the specific words "airports" in § 1–39–107; "public utilities" in § 1–39–108; and "public hospital" in § 1–39–109, W.S.1977, Cum.Supp. 1981, are also included within the term "public facilities." It is true that §§ 1–39–107, 1–39–108 and 1–39–109, only impose liability for negligent *operation* of the named facilities, whereas § 1–39–111 imposed liability for *operation and maintenance* thereof. The "intention" focus in this respect may be the subject of interpretation in a future case.

Normally, a specific enumeration followed by a general term restricts application of the statutory provision to the same kind of things specifically enumerated. *State ex rel. R. R. Crow & Co. v. Copenhaver*, 64 Wyo. 1, 184 P.2d 594 (1947); *State ex rel. Goshen Irr. Dist. v. Hunt*, 49 Wyo. 497, 57 P.2d 793 (1936); *In re Metcalf's Estate*, 41 Wyo. 36, 282 P. 27 (1929); *Baker v. Board of Com'rs of Crook County*, 9 Wyo. 51, 59 P. 797 (1900); *People ex rel. School Dist. No. 3, Laramie County v. Dolan*, 5 Wyo. 245, 39 P. 752 (1895); *Town of Worland v. Odell & Johnson*, 79 Wyo. 1, 329 P.2d

---

1. Wyoming Attorney General Opinion No. 79–003, January 30, 1979, p. 11, requested by the Chairman of the Joint Judiciary Interim Committee.

2. It well could be that the legislature wished to maintain such control to avoid the future joinder of the state as a defendant in almost every claim predicated on an accident on streets and highways.

797 (1958). Highways are not the same kind of thing as airports, hospitals, etc. Accordingly, without more, I could not find a legislative intention to include highways in the "public facilities" language of § 1–39–111.

However, one step in the legislative history of the enactment reflects a legislative intent to use the words "public facilities" to mean "highways and streets." When the words "public facilities" first appeared in the enactment at the time House Bill 122A was substituted for House Bill 122, the section heading read: "Liability; highways and streets."

" * * * [C]ontext, position of the sections, and the insertion of subheads in the original Act * * * are unmistakable indicia * * * [of legislative intention] * * *." *Hoffmeister v. McIntosh*, Wyo., 361 P.2d 678, 679, reh. denied 364 P.2d 823 (1961). (Bracketed material added.)

Although the section heading was not newly inserted, the legislature saw fit to allow it to remain. It is true that a joint conference committee subsequently changed the section heading to read: "Liability; public facilities"; but at the time the words "public facilities" were inserted into the statute proper, the section heading was allowed to reflect application of the section of "highways and streets." The legislative intent was thus expressed to have "public facilities" be synonymous with "highways and streets."

As noted, the enactment concerns an extremely important element of negligence actions. The legislature should remove any ambiguous or vague aspects of it and use language to make clear the extent of the waiver of immunity.