**Rex A. SHEPPERD and Steve Edwards, Plaintiffs,**

**v.**

**BOETTCHER & COMPANY, INC., Defendant.**

**No. C85–068–K.**

United States District Court, D. Wyoming.

July 17, 1985.

Edward J. Pluimer, Dorsey & Whitney, Minneapolis, Minn., for plaintiffs.

William E. Murane, Holland & Hart, Denver, Colo., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

KERR, District Judge.

The above-entitled matter having come on regularly before the court on defendant's motion to dismiss; plaintiffs appearing by and through their attorney, Edward Pluimer, and defendant appearing by and through its attorney, William E. Murane, and the court having heard the arguments of counsel and having carefully reviewed said motion and briefs filed herein, and being fully advised in the premises, FINDS:

That this matter is before the court on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and the facts alleged by the plaintiffs will be taken as true for the purpose of ruling on said motion. This court has jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiffs were customers of the Casper office of defendant, Boettcher & Company, Inc. (Boettcher). The defendant, through its agents, solicited plaintiffs' investments in certain undivided fractional working interests in oil, gas, and mineral leases located in Louisiana and operated by Latham Exploration Co., Inc. The plaintiffs, in reliance upon Boettcher, purchased these working interests by entering into two participation agreements. Under these agreements plaintiffs received an undivided one and two-thirds percent (1⅔%) working interest and were obligated to bear a proportionate share of costs and risks incurred in the drilling operations. Plaintiffs received no right of management or control over these drilling operations.

The plaintiffs allege that the working interests are "securities" and "investment contracts" within the meaning of the Wyoming Uniform Securities Act, Wyo.Stat. § 17–4–101 et seq. (1977), et seq. and the Wyoming Securities Regulations promulgated by the Secretary of State for Wyoming. Plaintiffs assert that these working interests, as securities, should have been either registered or exempted from registration prior to any offer or sale in the state of Wyoming and since the securities were not so registered or exempted, the sale to plaintiffs was unlawful. Therefore, plaintiffs claim that as a result of this unlawful sale, each lost $142,982.23 and that pursuant to the Act, they are entitled to recover these monies from the defendant.

In defendant's motion to dismiss, Boettcher asserts that the working interests were not and are not "securities" within the scope and definition of the Wyoming Uniform Securities Act and that, therefore, said complaint fails to state a cause of action.

Wyoming Statute § 17–4–113(a)(xi) (1977) defines "security" as:

[a]ny note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit sharing agreement; collateral trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting trust certificate; certificate of deposit for a security or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. 'Security' does not include any insurance or endowment policy or annuity contract under which an insur-

ance company promises to pay money either in a lump sum or periodically for life or for some other specified period. The plaintiffs claim that under this definition, the term "investment contract" includes agreements such as those involved here, for undivided fractional working interests in oil and gas leases.

■ Where a party is seeking to claim a right or impose an obligation under a statute, it is necessary for the court to read the statute and determine its intent and purpose giving effect to that intent. *State ex rel. Albany, etc. v. Board of Cty.*, 592 P.2d 1154, 1157 (Wyo.1979). Courts must first look to the plain language of the statute to determine the intention behind the legislation. *State v. Stovall*, 648 P.2d 543, 544 (Wyo.1982); *McGuire v. McGuire*, 608 P.2d 1278 (Wyo.1980). However, where the language of the statute is ambiguous, resort may be had to rules of construction. *Sanches v. Sanches*, 626 P.2d 61, 62 (Wyo. 1981); *Matter of Adoption of Voss*, 550 P.2d 481, 484 (Wyo.1976). The fundamental role of statutory construction is to divine what the legislature intended by the language used, *State v. Stovall*, 648 P.2d at 545, and such legislative intent can be determined from the legislative history of the statute. *Rocky Mountain Oil & Gas Ass'n v. Watt*, 696 F.2d 734, 745 (10th Cir.1982); *State v. Stovall*, 648 P.2d at 546; *Saffels v. Bennett*, 630 P.2d 505, 509 n. 1 (Wyo.1981); *Sanches v. Sanches*, 626 P.2d at 62 (Wyo.1981); *Padilla v. State*, 601 P.2d 189, 192 (Wyo.1979); *Matter of Adoption of Voss*, 550 P.2d at 484; *Town of Clearmont v. State Highway Comm'n*, 357 P.2d 470, 476 (Wyo.1961).

■ In looking at the plain language of the statute itself which defines "security," we are confronted with a host of items which may constitute a "security" under the Wyoming Uniform Securities Act. Among these is listed the term "investment contract," which plaintiffs claim encompasses the agreements they entered into for working interests in oil and gas leases. The court acknowledges that an "[a]mbiguity exists where a word or group of words

in a statute is susceptible of more than one meaning." *State ex rel. Albany, etc. v. Board of Cty.*, 592 P.2d at 1156. This is assuredly the situation with the term "investment contract," which is patently vague and ambiguous and could easily include any type or variety of agreements. This court must, therefore, look to extrinsic sources for aid in interpreting the intent of the Wyoming legislature.

The Secretary of State pursuant to the authorization bestowed in Wyo.Stat. § 17–4–124 (1977), has adopted rules and regulations to aid in implementation of the Wyoming Uniform Securities Act. Among these regulations, the Secretary has adopted a rule that defines the term "investment contract," and provides:

> Section 1. Investment Contract. An "investment contract" as used in W.S. 17–4–113 includes but is not limited to:
>
> (a) Any investment in a common enterprise with the expectation of profit to be derived substantially through the efforts of a third party or the promoter, or
>
> (b) Any investment by which an offeree furnishes initial value to an offeror, and a portion of this initial value is subjected to the risks of the enterprise, and the furnishing of the initial value is induced by the offeror's promises or representations which gave rise to a reasonable understanding that a valuable benefit of some kind over and above the initial value will accrue to the offeree as a result of the operation of the enterprise, and the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise.

*Rules of Wyoming Securities Division*, ch. II, § 1 (Aug. 18, 1980).

■ The language of this rule is conceivably broad enough to cover the types of agreements for working interests in oil, gas, or mining leases, which are involved in the present case, and certainly deference should be afforded "[t]o the interpretation given a statute by the agency charged with its administration." *Rocky Mountain Oil and Gas Ass'n v. Watt*, 696 F.2d at 745;

*Langdon v. Lutheran Brotherhood,* 625 P.2d 209, 212 (Wyo.1981). However, it is fundamental that where the administrative interpretation and regulations are contrary to or inconsistent with the legislative intent behind the statute so as to frustrate the policy behind the statute, no deference can be given to the agency's interpretation, and construction of the statute is ultimately for the court. *Security Industry Ass'n v. Board of Governors of Fed. Reserve System,* — U.S. —, —, 104 S.Ct. 2979, 2983, 82 L.Ed.2d 107 (1984); *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981); *Pueblo of Santa Ana v. Mountain States Tel.,* 734 F.2d 1402, 1406–1407 (10th Cir.1984); *Nevada Power Co. v. Watt,* 711 F.2d 913, 920 (10th Cir.1983); *Langdon v. Lutheran Brotherhood, Id.; Demos v. Board of Co. Comm'rs. of Natrona Co.,* 571 P.2d 980 (Wyo.1977).

▮ The court concludes that after reviewing the legislative history of the statute and Act, the regulation, to the extent it may encompass such working interests in oil, gas, and/or mining leases, is contrary to the legislative intent behind the Wyoming Uniform Securities Act. That history strongly and clearly indicates the legislature's intent to exclude such interests from the definition of "security" under Wyo. Stat. § 17–4–113(a)(xi) (1977). Such intent has been ascertained by examining the legislative journals and reviewing the procedure of enactment. See *Matter of Adoption v. Voss,* 550 P.2d at 484; *Western Nuclear v. Watt,* 475 F.Supp. 654, 656 (D.C.Wyo.1979); *rev'd* 664 F.2d 234 (10th Cir.1981), *cert. granted* 456 U.S. 988, 102 S.Ct. 2266, 76 L.Ed.2d 400, *rev'd* 458 U.S. 1104, 102 S.Ct. 3480, 73 L.Ed.2d 1365 (1982).

In 1965, when the Wyoming legislature adopted the Uniform Securities Act, it did so with certain changes. In the Act and original bill, Wyoming Senate File No. 10,

the section defining "security" included in its provision, the language: "[c]ertificate of deposit for a security; *certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease;* or in general...." The Senate passed the Act as introduced, but the House Committee recommended that the Act be amended by deleting the underlined language above, concerning oil, gas, and mining interests.[1] This amendment was approved by the joint committee and passed both the House and the Senate as amended. See Digest, Wyoming Senate and House Journals, S.F. No. 10, at 56 (1965).

This court is persuaded that the legislature's act of specifically deleting the language relating to oil, gas, and mining interests is strongly indicative of the intent to exclude such working interests from the definition of "security" under the Act. This intent is further buttressed by the circumstances surrounding the prior legislation on securities. The Act, in effect, prior to 1965 defined "security" as: "[S]tock certificates, shares, bonds, debentures, certificates of participation, contracts, or other instruments in the nature thereof by whatsoever name known or called." Wyo.Stat. § 17–102 (1959).

In 1962, the Wyoming Attorney General issued an opinion which concluded that the definition in the Act above did not include oil, gas, or mining interests because no specific mention had been made of these interests within the Act and that in jurisdictions where such interests had been declared securities, the legislation in those states specifically designated these interests as securities. Op.Wyo.Att'y Gen., No. 4 at 93 (1962). Further, the Attorney General observed that in 1961 the legislature was faced with an opportunity to amend the statute to include in the definition of security the following language: "Certificate of interest or participation in an oil, gas, or mining title or lease or in payments

---

1. In lieu of the language deleted, the following was inserted: "pre-need funeral or burial contract." This language was deleted in 1973. Session Laws 1973, Ch. 69, § 1; 1975 Cumm.Supp. Wyo.Stat.

out of production under such title or lease." That proposed amendment failed to pass.

The court finds the legislative history to be consistent in excluding oil, gas, and mining working interests as securities and, therefore, finds that neither Wyo.Stat. § 17–4–113(a)(xi) (1977) nor the security regulation on investment contracts encompass working interests in oil, gas, or mining titles or leases or payments from production under such titles or leases within the definition of "security." Therefore, the interests represented by the agreements involved in this case would not fall within the filing requirements of the Act and thus plaintiffs' complaint fails to state a claim upon which relief can be granted.

NOW, THEREFORE, IT IS ORDERED that defendant's motion to dismiss be, and the same is, hereby granted; it is

FURTHER ORDERED that each party shall pay their own costs.